[No. 40766.    Department One.    July 24, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. FLORENCE R. ELDRED, *Appellant*.*

*Fielding H. Ficklen*, for appellant.

*Mike Johnston*, for respondent.

LEAHY, J.†—Appellant, Florence R. Eldred, was convicted in justice court on July 6, 1967, of driving while under the influence of intoxicating liquor, of negligent driving, and of having no operator's license on her person and driving while her license was suspended. Notice of appeal was filed and on July 18, 1967, appellant filed a note for trial in superior court but did not note the case for any

*Reported in 457 P.2d 540.

†Justice Leahy is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. 4, § 2(a) (amendment 38).

specific trial date. On October 7, 1968 appellant filed a motion to dismiss for want of prosecution and the motion was denied, and the case was set for trial on November 6, 1968.

Testimony at the trial indicated that the arresting officer, Orville Brown, a Kettle Falls town marshal, first observed the appellant sitting in a parked car in the town of Kettle Falls. After talking to appellant for a short time, Brown determined that appellant was intoxicated and told her that if the car was to be driven, her husband, a passenger in the car, should do the driving. They changed places and drove away. Shortly thereafter, Brown observed appellant driving the automobile erratically and stopped the car outside of the town of Kettle Falls. Appellant was then arrested and had to be helped out of the car by two state patrol officers who had arrived on the scene. Testimony indicated that appellant was unsteady on her feet, and it was the opinion of trooper Baxter that she was highly intoxicated. While appellant and her husband were in the back of the state patrol vehicle, trooper Baxter heard appellant admit to her husband that she had been driving.

It is the contention of appellant that her constitutional right to a speedy trial, as provided for under the sixth amendment of the United States Constitution and article 1, section 22 of the Washington State Constitution, has been violated. She asserts that although she never asked for a continuance or filed delaying motions, over 1 year and 3 months passed between the time appellant served notice of trial in superior court and the time the case was tried.

■ JCrR 6.01 provides, in part, the following rule with regard to bringing a criminal appeal from justice court on for trial:

> After a notice of appeal is filed, the justice court shall immediately, and in no event later than 10 days thereafter, file with the clerk of the superior court in which the appeal is pending a transcript duly certified by such justice court
> 
> . . . .
> 
> . . .
> 
> Within 10 days after the transcript is filed, appellant

shall note the case for trial and otherwise diligently prosecute the appeal.

We have often stated that these rules are mandatory and that the burden of complying with them is clearly upon the appellant. *See State v. Gregory,* 74 Wn.2d 696, 698, 446 P.2d 191 (1968) and cases cited therein.

■ We have examined the record and the transcript and can find no evidence that appellant specifically complained to either the prosecuting attorney or to the court about the absence of a timely trial date, nor did she make demand that the matter be brought on for trial without further delay. In October, 1967, appellant's attorney was notified by the then prosecuting attorney that unless an emergency arose, no jury term would be available until the first part of 1968. This, we believe, was an invitation to appellant to urge, if she really desired to go to trial, that there was an "emergency" in her case. This she did not do. On March 19, 1968, approximately 8 months after the appeal had been perfected, appellant's counsel wrote to the prosecuting attorney concerning the case and said in part, "I am in no hurry to try it."

In view of the rather unusual length of the delay in the trial of this matter, the decision of this court might have been entirely different, had an appropriate demand for a timely trial been made by appellant. This would be particularly true if such a demand had been made by appellant on either one or both of the occasions when the trial court cancelled previously scheduled jury terms.

The trial court itself was responsible for a large part of the 1 year and 3 months delay of the trial of this matter. It should constantly be kept in mind that a defendant may be deprived of his or her constitutional right to a speedy trial just as much by the trial court as by a prosecuting attorney.

While it is commendable on the part of the trial courts of less populated counties to adequately supervise the expenditure of tax money by abstaining from calling jury terms when the absence of sufficient cases so dictates, the practice should not be carried on to the extent that the

constitutional right of a defendant to a speedy trial, in a criminal proceeding, might possibly be put in jeopardy.

In the instant case, however, the failure of appellant to receive a speedy trial was primarily her own fault and the assignment of error raised by appellant is without merit. This is also true of appellant's contention that she was prejudiced by the lack of a speedy trial in that she had to pay an additional premium on her bail bond. If appellant had wanted to avoid this problem, she should have made adequate demand that the case be set at an earlier date.

Appellant further claims to have been prejudiced by the death of one of her witnesses, Henry Bailey, who died after notice of trial was served but before the case was tried. It is argued that if Bailey had been present to testify, he would have stated that he had been riding in the car at the time of the arrest, that the liquor in the car was his own, and that appellant's husband, Edward Eldred, was driving the automobile at the time of the arrest.

It should be first pointed out that appellant's attorney made no statement to the record as to what Mr. Bailey's testimony would have been. In addition, the main thrust of his testimony, had he testified, was presented by two other witnesses. The question of whether appellant had been driving at the time of the arrest was brought before the jury when two other witnesses testified that it had been Edward Eldred, not appellant, who had been driving. The jury, as is their prerogative, apparently chose not to believe the two witnesses in light of the testimony of officer Brown and state trooper Baxter. The question as to who owned the liquor was completely immaterial.

The testimony which Mr. Bailey would have presented was merely cumulative and there is nothing in the record to indicate that had he testified, the jury's decision would have been in any manner changed.

We are unable to see how appellant was prejudiced by the preordained absence of Mr. Bailey, and, in addition, it must be kept in mind, as we have stated above, that the delay, during which Mr. Bailey died, was primarily the

fault of appellant due to the clear burden to proceed, which is placed upon her.

The next assignment of error raised by appellant deals with whether there was sufficient evidence that the arresting officer, Orville Brown, had been legally appointed as deputy sheriff of Stevens County and was acting as such when he arrested the appellant. Although Brown was a city marshal of Kettle Falls, the arrest took place outside the city limits, and as marshal, his rights of arrest would be limited.

Testimony of both officer Brown and the sheriff of Stevens County, Albert Dutch Holter, showed that Brown was not regularly employed by the county, but had received a deputy sheriff's commission in 1955 or 1959 and that the commission had been renewed and was valid at the time of the arrest.

Appellant argues that since no compensation was paid to Brown by the county, and since the statutes providing for such appointment were not complied with, Brown had no authority to make the arrest and, consequently, his testimony was inadmissible.

■ With this argument we do not agree. RCW 36.28.020 provides in part:

Persons may also be deputed by the sheriff in writing to do particular acts; including the service of process in civil or criminal cases, and the sheriff shall be responsible on his official bond for their default or misconduct.

The appointment of officer Brown meets the above requirements and although appellant alleges that Brown was not under civil service at the time of the arrest, there is no statutory provision requiring officer Brown to be under civil service since he was not a regular salaried employee of Stevens County but legally acting under a special commission. We find, therefore, that officer Brown had all necessary and legal authority to arrest appellant and that his testimony was properly admitted.

■ Appellant's last assignment of error deals with a conversation between herself and her husband which was overheard by Trooper Baxter. Trooper Baxter testified that

while appellant and her husband were sitting in the back of the state patrol vehicle, he heard appellant admit that she had been driving. Appellant contends that such statement is inadmissible since she had not then been advised of her constitutional rights. With this contention we must disagree. Trooper Baxter merely testified as to the substance of a conversation between appellant and her husband. The conversation was in no way prompted by any action of the officers. No questions had been asked of appellant to bring about her statement. There was no custodial interrogation since the officer merely overheard the appellant and her husband make certain statements during a voluntary conversation.

The admission of such voluntary, non-interrogational statements are not prohibited by *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966) and subsequent holdings in this regard.

The court in *Miranda v. Arizona, supra,* stated at 444:

[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *By custodial interrogation, we mean questioning initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

(Italics ours.) The court continued at 478:

There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. *Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.*

(Footnote omitted. Italics ours.)

We find, therefore, that the testimony of trooper Baxter was properly admitted.

The judgment is affirmed.

Hunter, C. J., Weaver, Hamilton, and McGovern, JJ., concur.