[No. 1565-1.    Division One—Panel 2.    July 16, 1973.]

THE STATE OF WASHINGTON, *Appellant*, v. CHARLES EDWARD SMITH *et al.*, *Respondents*.

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael P. Ruark, Deputy,* for appellant.

*Anthony Savage,* for respondents.

CALLOW, J.—The state appeals from an order suppressing evidence garnered from an allegedly illegal search of the car and suitcase of the defendant. The trial court concluded the search violated the fourth amendment of the United States Constitution prohibiting unreasonable searches and seizures and dismissed the action.

The findings of fact, accepted as verities, disclose that on November 10, 1971, a lieutenant of the Seattle Police Department received information from an informant that one "Chuck Smith" was selling large amounts of heroin out of a room at the Sea-Tac Motor Inn. The lieutenant had known this informant for a year, and the informant had provided information which had led to the seizure of large amounts of narcotics and dangerous drugs on prior occasions and to arrests and convictions involving drug offenses. When the Seattle officer originally received the information from the informant, he ordered that Smith be placed under surveillance.

The lieutenant, upon receipt of the information, checked the police department files and determined that one Charles E. Smith of Kenai, Alaska, was listed therein. The lieutenant then contacted the Commander of Criminal Investigation for the Alaska State Troopers regarding Charles E. Smith. The Alaska trooper told the Seattle officer that a Charles E. Smith was considered a criminal in Alaska, known as a heroin dealer, and had been arrested recently for possession of a large amount of heroin. The trooper further informed the Seattle officer that the heroin found in the possession of Smith was analyzed and found to be 98 percent pure. At 6:45 p.m. (apparently on November 10, 1971) the Seattle officer received a packet from the Alaska State Troopers containing information pertaining to

Charles E. Smith, including a photograph which showed that the Charles E. Smith under surveillance was the same Charles E. Smith known to the Alaska authorities.

During the period of surveillance, the Seattle officer observed Smith driving a black and gold 1972 Buick, and a black and blue 1970 Cadillac. The Seattle officer followed Smith and noted that he employed techniques designed to avoid being followed and drove in an unusual and erratic manner. On one occasion during the surveillance, the members of the intelligence unit of the police department went through the refuse taken from the motel room occupied by Smith and the codefendant Judy Jacobs and found notes referring to "spoons" and "pieces" (terms referring to quantities of heroin), and quoting prices. On one piece of paper was a name and telephone number. The Seattle officer checked the number through the telephone company and determined that it was the telephone of a man who had been in possession of a large amount of narcotics when he was arrested a few months earlier.

On November 11, 1971, the Seattle officer observed a man and woman enter the motel room at approximately 11 p.m. Three and one-half hours later, the informant told the Seattle officer that Smith had just sold the man who had entered less narcotics than had been represented to him, and the suspects might move to avoid retaliation. Thereafter, the Seattle officer observed Smith and Judy Jacobs leave the motel without luggage at 3:15 a.m. (apparently on November 12, 1971). They returned at approximately 4 a.m. and Smith left alone and returned at 5 a.m. Then both Smith and Jacobs began loading large amounts of luggage into the Buick automobile. The officer had contacted the manager of the motor inn, knew that Smith had prepaid his rent so that he could leave without checking out; and, therefore, as Smith and Jacobs left the motel and approached the Buick, they were placed under arrest. At the time of the arrest, the officers knowing the Buick had been rented, searched the automobile, found and removed the luggage, took it to an empty room in the motor inn,

searched it, and found heroin in a black bag. The Buick was returned to the rental agency.

The sole issue raised is whether the evidence seized following the search of the automobile was obtained in violation of the fourth amendment to the United States Constitution.

■ The protection of the Fourth Amendment must be honored by the states. The legality of a search and seizure must be determined under state law initially, but the constitutional protection given to citizens from unreasonable searches and seizures must be no less than that given under the standards set forth by the federal courts. *Ker v. California*, 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623 (1963); *Mapp v. Ohio*, 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961); *State v. Hawkins*, 261 A.2d 255 (Me. 1970).

■ It was stated in *Johnson v. United States*, 333 U.S. 10, 13, 92 L. Ed. 436, 68 S. Ct. 367 (1948):

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial

officer, not by a policeman or government enforcement agent.

(Footnotes omitted.)

Likewise, *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967), held that searches conducted outside of the judicial process without the prior approval of an uninvolved, objective judge or magistrate were per se unreasonable under the Fourth Amendment subject only to specifically established exceptions. The government has the burden of showing that the urgency of the situation made the chosen course imperative and permitted a search without a warrant within one of the exceptions. *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971); *State v. Sanders,* 8 Wn. App. 306, 506 P.2d 892 (1973).

A series of United States Supreme Court cases have discussed the validity of a search without a warrant under the specific exception which pertains to automobiles. In *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925), a search warrant was held unnecessary where there was probable cause to search an automobile which officers had stopped on the highway when they had a reasonable belief that contraband was being carried because the car was movable, the occupants alerted and the contraband might be lost if a warrant were a prerequisite.

In *Preston v. United States,* 376 U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881 (1964), the defendant was convicted on evidence obtained by the search of an automobile in which he had been sitting at the time of his arrest. After the defendant was arrested and taken to the police station, the car involved was driven to the station. Loaded revolvers were found, and additional evidence obtained from the trunk when the vehicle was then searched. The court held the police could search without a warrant for weapons or the fruits or implements used to commit a crime if it was done contemporaneously with the arrest of the accused.

The right to search and seize was held to extend to things under the immediate control of an accused and depended on the circumstances of the case. Further, it was held that a contemporaneous search is also justified by the need to seize weapons or other things which might be used to assault an officer or escape or because of the need to prevent the destruction of evidence. The court held that these justifications were absent for a search remote in time and place from the arrest and that once an accused was under arrest and in custody, a search made at another place without a warrant could not be justified as incident to the arrest. The search was held unreasonable, and the evidence obtained as a result of the search inadmissible. We note that the arrest made in the *Preston* case was made on a charge of vagrancy, but with probable cause to believe a felony had just been committed; and the crime for which the arrest was made did not involve contraband. We think these are circumstances material to the test of whether a search incident to an arrest was reasonable or unreasonable. *See also Brinegar v. United States,* 338 U.S. 160, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949); *United States v. Di Re,* 332 U.S. 581, 92 L. Ed. 210, 68 S. Ct. 222 (1948).

*Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969), said that the scope of a search incident to a lawful arrest was limited to the area from which the person arrested might have obtained weapons or evidentiary items. The opinion observed that this rule was consistent with the exception allowing warrantless searches of automobiles under certain conditions. We find the following commentary on the *Chimel* case in D. Nedrud, *The Supreme Court and the Law of Criminal Investigation* A § 3.2, at 105 (1969):

> The essentiality of a search warrant is now established. The new Chimel Rule would seem to limit searches made incident to arrest, so that, except in rare instances of an arrest made soon after the crime where the evidence is still on or near the arrestee, or in the case of automobile searches—which are not affected by *Chimel* if made immediately after the arrest—the use of a search warrant is

imperative to a valid search. However, it would seem that, in the manner of automobile searches, exceptions to the Chimel Rule might be forthcoming for "exigent circumstances" involving the possible destruction of evidence located beyond the immediate area of the arrest where time will not permit seeking a search warrant, such as in cases of "hot pursuit."

(Footnotes omitted.) *State v. Canaday*, 79 Wn.2d 647, 684, 488 P.2d 1064 (1971), analyzed the *Chimel* case as based on the fact that in *Chimel* nothing existed to suggest that at the time of the arrest the defendant was then "engaged in, about to engage in, was withdrawing from the scene of, or fleeing from the commission of a felony." The warrantless search made in the *Canaday* case, which included a search of the automobile reportedly used in the commission of a felony, was held to be reasonable because it was made at a time and place "closely related to the arrest of the accused . . ." *State v. Palmer*, 5 Wn. App. 405, 408; 487 P.2d 627 (1971), said:

Chimel continued to recognize, as an exception to the general rule requiring a search warrant, the right of an arresting police officer incident to an arrest and substantially contemporaneous with it to conduct a warrantless search of the arrestee and the area within his immediate control, *i.e.*, "the area from within which he might have obtained either a weapon or something that could have been used as evidence against him . . ." 395 U.S. at 768.

*Chambers v. Maroney*, 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970), came next in time after the *Chimel* case and held that whenever the police with probable cause arrest suspects and make a simultaneous search of an automobile, they may also seize the car, remove it to the police station and search it there. The *Chambers* case extends the *Carroll* case only in that if there is probable cause to arrest the occupants of an automobile and the circumstances initially justify a search without a warrant, the police can remove the locale of the search to the police station. It distinguishes the *Preston* case as involving an arrest for

vagrancy with no probable cause to believe that contraband or evidence of the crime was concealed in the automobile; while pointing out that in *Chambers*, the police had probable cause to believe that the vehicle had been used to escape from a felony and contained evidence of the felony.

*Coolidge* held a seizure of an automobile standing in a driveway after the defendant's removal from the premises as being not incident to his arrest inside his house. The search of the automobile was made many months following the seizure and was held unreasonable without a warrant because there was a lack of immediacy and proximity. The search could not be justified as incident to an arrest because it was not made contemporaneously with the arrest of the defendant. The *Chambers* case was distinguished by noting that the vehicle in that case was stopped on the highway, was movable, and the contents might not be found again if a warrant had to be obtained.

■ The officers in this case had strong probable cause to arrest the defendant. As stated in *State v. Parker*, 79 Wn.2d 326, 328, 485 P.2d 60 (1971):

> Probable cause derives from a composite of facts, circumstances and judgment. Probable cause for an arrest without a warrant arises from a belief based upon facts and circumstances within the knowledge of the arresting officer that would persuade a cautious but disinterested person to believe the arrested person has committed a crime. . . . The officer need not have knowledge or evidence sufficient to establish guilt beyond a reasonable doubt, for in this area the law is concerned with probabilities arising from the facts and considerations of everyday life on which prudent men, not legal technicians, act. . . . Expressed another way, "Proper cause for arrest has often been defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty."

(Citations omitted.)

There existed probable cause to believe that a felony had just been committed, that the defendants were withdraw-

ing or fleeing and that contraband was involved and had just been placed in the automobile. Probable cause to believe that a specific felony had been committed did not exist until a few hours before the arrest and then the officers were faced with a situation which had become emergent when they saw the defendants about to depart. The officers then had the choice of arresting the defendants in their motel room, arresting them as they entered the vehicle, or arresting them in the short space between their room and the place where the vehicle was parked. They had just seen baggage containing contraband placed in the vehicle and chose to arrest the defendants after they had left the room rather than breaking into the room or waiting until they had entered the vehicle when the possibilities and risks of resistance, weapons, flight, and destruction of evidence would have been greatly increased.

■ Our constitutional sensibilities may be affronted because the police might have acted otherwise by securing a warrant in the time allowed them while they were watching the defendants during the day on November 10, 1971. At that time, however, there did not exist evidence of the commission of a specific crime. This did not come about until the informant told the officers that the defendants had sold narcotics to specific people likely to object to the quality of the merchandise. Until that occurred, the probable cause to issue a search warrant was weak, and a warrant might well have been denied. When the evidence became strong enough to support the issuance of a search warrant, it was at an early morning hour when the securing of a warrant was fraught with difficulties. In any event, the mere fact that a search warrant could have been secured does not make a search unreasonable and invalid. *United States v. Rabinowitz,* 339 U.S. 56, 94 L. Ed. 653, 70 S. Ct. 430 (1950); *State v. Schwartzenberger,* 70 Wn.2d 103, 422 P.2d 323 (1966).

■ Regardless of what might have been, our inquiry is whether the warrantless search of the automobile was reasonable within the constitutional purpose of protecting each

citizen's right to freedom from intrusion as weighed against the right of each citizen to be safe from crime. *Brinegar v. United States, supra* at 175, 176.

█ We find present in this case the following facts which establish the search of the vehicle as a reasonable search for the purpose of seizing and safekeeping contraband:

1. The defendants had just been validly arrested based upon probable cause to believe that a felony had taken place a short time before.

2. The arrest took place at the safest place possible under the circumstances with the defendants about to depart from the scene of the crime.

3. The arrest was in close proximity to the vehicle which was searched immediately.

4. There was probable cause to believe that the contraband heroin connected with the felony had just been placed in the vehicle.

5. The contraband heroin when placed in the vehicle was vulnerable to (a) destruction as evidence and/or (b) theft by third persons.

6. The defendants apparently were leaving because of fear of the imminent return of the people who had been sold poor grade heroin. The police knew of this state of affairs and its dangers.

We find that the search made for the contraband was reasonable, and the evidence seized to protect it from destruction or theft should have been admitted. *See also Cady v. Dombrowski*, 41 U.S.L.W. 4995 (U.S. June 21, 1973); *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 20 L. Ed. 2d 538, 88 S. Ct 1472 (1968); *United States v. Gulledge*, 469 F.2d 713 (5th Cir. 1972); *United States v. Carneglia*, 468 F.2d 1084 (2d Cir. 1972); *United States v. Ellis*, 461 F.2d 962 (2d Cir. 1972); *State v. Lehman*, 8 Wn. App. 408, 506 P.2d 1316 (1973); E. Fisher, *Search and Seizure* § 112 (1970); B. George, *Constitutional Limitations on Evidence*

*in Criminal Cases,* ch. 3 (1973); 4 F. Wharton, *Criminal Evidence* § 726 (C. Torcia 13th ed. 1973).

The order dismissing the cause is reversed.

HOROWITZ and WILLIAMS, JJ., concur.