[No. 1663-1. Division One. January 28, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. WILLIE HARRIS, *Appellant*.

*Schroeter, Jackson, Goldmark & Bender, P.S.*, and *Paul W. Whelan*, for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney*, and *Charles J. Delaurenti II* and *Michael C. Duggan, Deputies*, for respondent.

JAMES, J.—Willie Harris appeals from his conviction at a jury trial of two counts, one for the possession of heroin, a

narcotic drug, and one for the possession of dangerous drugs, methamphetamine and phenobarbital. Harris makes a number of assignments of error which will be dealt with in three categories—the search, the trial and the sentencing. Pursuant to RCW 2.06.040, we will publish only that portion of this opinion relating to the sentencing. Appointed counsel on appeal did not represent Harris at trial.

THE SENTENCING. Finally, Harris attacks the sentencing procedure employed by the trial judge. He further asserts that the state was guilty of misconduct calculated to mislead and prejudice the judge at the time of sentencing.

Harris was sentenced to a maximum term of 5 years on each count with the sentences to run concurrently. The state had recommended that Harris be sentenced to a term of 5 years on each count; that the sentences run consecutively and that he be fined $10,000.

The sentencing was first scheduled for April 4, 1972. Upon reading the state's presentencing report and recommendation, the trial judge observed that it was predicated upon the state's contention that Harris was a major wholesale dealer in drugs. The judge said: "Now, this is pretty serious. It will make a difference of a number of years that the defendant will serve." He further observed that the evidence produced at trial had not convinced him that Harris was a "dealer in large quantities." He concluded: "I think there ought to be a further showing, and that the defendant ought to be here with a chance to cross-examine more fully; so I would like to see this matter put over, and I think there ought to be further oral testimony."

At a subsequent hearing held on April 18, 1972, the state presented the testimony of two Seattle police officers and a federal narcotics agent. The agent and one of the officers had participated in the search and in the arrest of Harris and had testified at trial. The testimony of all three of the officers at the sentencing hearing may be fairly summarized as a statement of personal belief that Harris was a major dealer in narcotics. None of the officers had any hard evidence to support their belief, but all expressed their

confidence in reports to this effect from informants whom they believed to be reliable.

In summarizing his reasons for urging a severe sentence, the state's attorney also informed the judge that Harris and three other inmates of the county jail had recently been charged with sodomy and that the charge against one of the four had been dismissed upon his guilty plea to a charge involving the sale of heroin. Harris was offered the opportunity to make a statement in his own behalf and he categorically denied that he was a drug dealer. He was subsequently acquitted of the sodomy charge.

Before pronouncing sentence, the trial judge stated:

> I want to say right now that I am not going to take any notice of any unrelated charge that may be pending against Mr. Harris. I am going to consider only matters that relate to narcotics, and my present thinking is to consider only such items as have been testified to this morning here as are within the range of the inferences that might be made from the findings by the officers at the time of the search and which were evidenced at the trial. For example, the testimony this morning, and I think it may have been partially covered in earlier hearings—maybe at the trial, I am not too sure—but I think there was testimony before this morning that lactose was used for the purpose of cutting heroin and that dealers in heroin would use lactose to cut down the percentage of heroin for sale.

The judge then referred to other evidence produced at trial which inferentially supported the claim that Harris dealt with substantial quantities of heroin. Specifically, the judge referred to the finding of spoons which were commonly used in the cutting and measuring of heroin and the fact that heroin residue was detected. The judge summarized his analysis by saying:

> The whole of that evidence leads one to believe I think naturally that the defendant was a dealer in narcotics.
> . . .
> . . .
> . . . A man who deals only at the bottom level is not going to have any use for these measuring spoons and

for a substantial quantity of lactose; so I think that the testimony here this morning is a matter that I can properly consider, that aspect of it.

The state's presentence report disclosed that on October 3, 1959, Harris had been convicted of grand larceny and had been sentenced to a maximum term of 15 years in the Washington State Reformatory. He was paroled on June 21, 1961.

Harris does not contend that his claims of error concerning the sentencing procedure would invalidate his conviction, but he asks that we remand for reconsideration and resentencing as was done in *State v. Potts*, 1 Wn. App. 614, 464 P.2d 742 (1969). Harris suggests that because "fundamental unfairness is seemingly built into any post verdict proceedings of this kind, . . . such proceedings should be proscribed altogether." Alternatively, Harris asks that we "establish guidelines which are consistent with due process, as to (a) the use of unsubstantiated presentence reports, (b) the scope of inquiry and (c) the extent, nature and quality of live testimony."

■ We do not agree that post-conviction hearings for sentencing purposes should be proscribed. On the contrary, we hold that the pervading requirement of fundamental fairness was met by the trial judge's sua sponte decision to require the state to support its presentence report and recommendation with sworn testimony subject to cross-examination by Harris. The trial judge's decision finds support in *State v. Vennum*, 149 Wash. 670, 674, 272 P. 62 (1928):

> When a court is prepared to pass sentence, there is no requirement that it shall take testimony to assist it in arriving at its judgment. It may, if it so desires, but that is a matter for the trial court alone to decide.

■ Nor would we deem it appropriate to utilize this case as a vehicle for establishing restricting post-trial procedural guidelines. The availability of any and all relevant information is obviously an essential requirement if a trial judge is to responsibly discharge his obligation to make the punishment fit the man rather than the crime.

A sentencing judge, however, is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.

Undoubtedly the New York statutes emphasize a prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime. *People* v. *Johnson*, 252 N. Y. 387, 392, 169 N. E. 619, 621.

(Footnote omitted.) *Williams* v. *New York*, 337 U.S. 241, 247, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949).

■ When criminal penalties are not fixed by statute other than by establishing maximum and minimum terms of servitude, and where probation is an available alternative to imprisonment, a trial judge must necessarily exercise judicial discretion when imposing sentence. Conceptually, the function of the exercise of judicial discretion may logically be reviewable only to determine if there has been an abuse of the discretionary prerogative. *State* v. *Douglass*, 66 Wash. 71, 118 P. 915 (1911). This is true because the exercise of discretion necessarily reflects the personal judgment of the court. *Cf. State* v. *Potts, supra.* An appellate court can properly find an abuse of discretion only if "it can be said no reasonable man would take the view adopted by the trial court." *State* v. *Hurst*, 5 Wn. App. 146, 148, 486 P.2d 1136 (1971).

The trial judge properly rejected any consideration of the pending sodomy charge, but in view of Harris' prior felony conviction, it is understandable that he did not grant a probationary sentence. The sentence which he did impose was far less severe than that urged by the state. Circumstantial, but nevertheless credible, evidence persuaded the

514

judge that Harris was a dealer in substantial quantities of drugs. He did not abuse his discretion.

Affirmed.

SWANSON, C.J., and HOROWITZ, J., concur.

Petition for rehearing denied March 19, 1974.

Review denied by Supreme Court May 21, 1974.