[No. 2403-1. Division One. May 5, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. BRADLEY LAVE BRESOLIN, *Appellant*.

*James R. Short*, for appellant (appointed counsel for appeal).

Christopher T. Bayley, Prosecuting Attorney, and Brian D. Gain, Deputy, for respondent.

CALLOW, J.—Bradley Bresolin, Lloyd Taber, and David Archie were charged with two counts of robbery[1] while armed with a dangerous weapon, and one count of second-degree assault.[2] The State introduced evidence to show that on December 26, 1972, Lloyd Taber arrived at the home of Mark Medearis and his father and asked Mark Medearis for some "dope." Taber then left the residence but returned several hours later. He was subsequently asked to leave by Medearis' father, and as he was doing so two men armed with weapons and wearing ski masks, later identified as Bresolin and Archie, entered yelling "Federal agents, this is a bust." Mark Medearis was beaten and assaulted with a gun, hit on the head several times, threatened with a knife,

---

[1] RCW 9.75.010 provides:

"Robbery is the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. If used merely as a means of escape, it does not constitute robbery."

[2] RCW 9.11.020 provides:

"Every person who, under circumstances not amounting to assault in the first degree—

". . .

"(3) Shall wilfully inflict grievous bodily harm upon another with or without a weapon; or

"(4) Shall wilfully assault another with a weapon or other instrument or thing likely to produce bodily harm; or

". . .

"(6) Shall assault another with intent to commit a felony, or to prevent or resist the execution of any lawful process or mandate of any court officer, or the lawful apprehension or detention of himself or another person; or

". . .

"Shall be guilty of assault in the second degree and be punished by imprisonment in the state penitentiary for not more than ten years or by a fine of not more than one thousand dollars, or by both."

thrown to the floor, handcuffed and repeatedly kicked. Medearis' father was also handcuffed and told to lie on the floor. Both of the armed men asked for drugs and money. Mark Medearis later made a positive identification of all three defendants.

Two other persons arrived at the Medearis residence during the course of the robbery. They were met at the door by the man identified as Bresolin, who made them lie down and who bound them. One of these persons later identified both Bresolin and Archie, while the other later identified Archie only.

There was testimony that the defendants took some change from the bedroom of Mark Medearis, a wallet from the elder Medearis, and several weapons from the home. All three defendants were convicted of two counts of robbery and one count of assault. The defendants Archie and Taber were sentenced to 20 years on each count of robbery and 10 years for assault, the sentences to run concurrently; while Bresolin was sentenced to 20 years on each count of robbery and 10 years on the assault, each sentence to run consecutively. This appeal is brought by Bresolin only.

The defendant Bresolin contends that it was error

(1) to admit testimony by Mark Medearis that during the robbery he was assaulted with a knife;

(2) to allow a police officer to testify about certain statements made by the defendant following his arrest;

(3) to permit the conviction and to sentence for two counts of robbery and one count of assault, this being claimed to violate the double jeopardy clauses of the Washington and United States constitutions;

(4) to impose a sentence claimed to deprive the defendant of the equal protection of the laws and claimed to be cruel and unusual punishment;

(5) to admit certain evidence claimed to have been the product of an illegal search and seizure.[3]

---

[3]We reject the further contention of the defendant that his conviction for the robbery of Mark Medearis as charged in count 2 of the

## Testimony As To Transaction

■ The defendant's first argument is that it was error to permit Mark Medearis to testify over objection that during the robbery the defendants placed a knife to Medearis' groin and threatened him if he did not tell them where money and "dope" were located. The defendant contends that (1) this testimony was evidence of other crimes since the information charged that the defendant committed the offenses by the use of a firearm, and (2) the testimony was introduced solely for its prejudicial effect. The trial court did not err, however, as the testimony was relevant to prove that the defendant committed the crime as charged in the information

> by force and violence to the person of Mark A. Medearis and by putting the said Mark A. Medearis in fear of injury to his person and against his will, . . .

This evidence was admissible as

> so much a part of the same transaction that it was direct evidence of the crime charged. The . . . evidence could have been used to show a separate and distinct crime but its use was not so limited. It was sufficiently related to the offense on trial as to form a part of the same transaction.

*State v. Granville*, 1 Wn. App. 976, 978, 465 P.2d 693 (1970). *See also State v. Niblack*, 74 Wn.2d 200, 443 P.2d 809 (1968); *State v. Hatch*, 4 Wn. App. 691, 483 P.2d 864 (1971).

## Hearsay

■ The defendant's second contention is that the court erred in allowing a police officer to testify that following the defendant's arrest, as the officer was about to inventory the contents of the automobile in which the defendant and Archie were arrested, he made a statement to the effect

information is without foundation since substantial evidence does exist to support conviction under that count. *See State v. McDonald*, 74 Wn.2d 141, 443 P.2d 651 (1968); *State v. Badda*, 68 Wn.2d 50, 411 P.2d 411 (1966); *State v. Larson*, 60 Wn.2d 833, 376 P.2d 537 (1962); *State v. Brache*, 63 Wash. 396, 115 P. 853 (1911).

that "anything we found in the car we would not be able to tie to him." At the hearing held pursuant to former CrR 101.20W, the trial court initially had determined that the statement was inadmissible because the defendant was not properly advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), as further enunciated in *State v. Creach*, 77 Wn.2d 194, 461 P.2d 329 (1969). Subsequently, the defendant Archie called this officer as his witness and the officer testified to Bresolin's statement. The defendant initially argues that the statement is hearsay. We observe that the statement is not hearsay since it was not offered to prove the truth of the statement itself, but only to prove that the defendant said it. The credibility of the defendant, whose statement it is purported to be, is not in issue. Whether the statement is reliable depends upon the credibility of the testifying police officer, who is subject to cross-examination, and the question is not whether the defendant's statement is true, but whether the defendant said it. The statement was admissible from the standpoint of the hearsay objection. *State v. Mott*, 74 Wn.2d 804, 447 P.2d 85 (1968); *Moen v. Chestnut*, 9 Wn.2d 93, 113 P.2d 1030 (1941); 5 R. Meisenholder, Wash. Prac. § 381 (1965, Supp. 1974).

SPONTANEOUS STATEMENTS

■ The defendant also contends that, since the statement had been previously held to be inadmissible at the CrR 101.20W hearing, its admission violated the defendant's Fifth Amendment privilege against self-incrimination. The testimony of the officer reveals that the defendant's statement, although made while in custody, was not the result of interrogation, but was spontaneous and volunteered. In *State v. Eldred*, 76 Wn.2d 443, 448, 457 P.2d 540 (1969), it was stated:

> The conversation was in no way prompted by any action of the officers. No questions had been asked of appellant to bring about her statement. There was no custodial interrogation since the officer merely overheard the appellant and her husband make certain statements during a voluntary conversation.

The admission of such voluntary, non-interrogational statements are not prohibited by *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966) and subsequent holdings in this regard.

*See also State v. Fullen*, 7 Wn. App. 369, 499 P.2d 893 (1972), *cert. denied*, 411 U.S. 985 (1973).

DOUBLE JEOPARDY—SAME EVIDENCE TEST

The third contention of the defendant is that his conviction and sentence for two counts of robbery and one count of assault violated the double jeopardy clauses of the Washington and United States constitutions in two respects: (1) all three counts arose out of the "same transaction," and (2) count 3 charging second-degree assault is necessarily included within count 2 charging robbery.

■■ The defendant cannot prevail on his claim that double jeopardy exists because the counts arose from the same transaction. *State v. Roybal*, 82 Wn.2d 577, 582, 512 P.2d 718 (1973), held that for purposes of the double jeopardy clauses of article 1, section 9 of the Washington Constitution and the fifth and fourteenth amendments to the United States Constitution, the test for determining whether multiple charges are for the "same offense" is to consider whether the charges are "identical both in fact and the law." In the *Roybal* case, the court rejected the so-called "same transaction" test relied upon by the defendant and applied the "same evidence" test quoting from *State v. Barton*, 5 Wn.2d 234, 237-38, 105 P.2d 63 (1940), as follows:

> A person is not put in second jeopardy by successive trials unless they involve not only the *same act*, but also the *same offense*. There must be substantial identity of the offenses charged in the prior and in the subsequent prosecutions both in fact and in law.
> . . .
>
> . . .
> The rule is, however, subject to the qualification that the offenses involved in the former and in the latter trials need not be identical as entities and by legal name. It is sufficient to constitute second jeopardy if one is necessarily included within the other, and in the

prosecution for the greater offense, the defendant could have been convicted of the lesser offense.

*See also State v. Eckman*, 9 Wn. App. 905, 515 P.2d 837 (1973). Thus, a defendant is not placed in double jeopardy if the requisite evidence necessary to sustain either charge, standing alone, would not sustain a conviction of the other charge. *State v. LaPorte*, 58 Wn.2d 816, 365 P.2d 24 (1961); *State v. Jefferson*, 11 Wn. App. 745, 524 P.2d 924 (1974).

These precepts answer the defendant's claim that he could not be charged, convicted and sentenced on both counts of robbery. Count 1 of the information charged the defendant with robbing the senior Medearis, while count 2 charged him with robbing Mark Medearis.[4] Under the "same evidence" test, the two charges are not identical in both law and fact. To sustain the first count, the requisite evidence would have to prove that the defendant robbed one victim, while to sustain the other count the evidence would have to show that the defendant robbed the other victim. When a defendant robs two or more persons at the same time, he is not placed in double jeopardy by being charged with robbery as to each victim by separate counts in an information. *Carpenter v. State*, 513 S.W.2d 702 (Mo. App. 1974); *State v. Johnson*, 23 N.C. App. 52, 208 S.E.2d 206 (1974); *Gibson v. State*, 512 P.2d 1399 (Okla. Crim. 1973); *State v. Gratz*, 254 Ore. 474, 461 P.2d 829 (1969); *Morgan v. State*, 220 Tenn. 247, 415 S.W.2d 879 (1967); *Jones v. State*, 502 S.W.2d 164 (Tex. Crim. 1973). *See* Annot., 51 A.L.R.2d 694 (1973).

### CHARGE ON ELEMENT OF OTHER CRIME

■ The defendant must prevail, however, on the claim that his conviction and sentence for both second-degree assault and the robbery of Mark Medearis placed him in double jeopardy. One of the elements constituting robbery

---

[4]The doctrine of collateral estoppel as discussed in *Ashe v. Swenson*, 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970), does not apply where the decision on separate counts is submitted in the same trial. No prior disposition can exist to estop the prosecution when no issue of ultimate fact has previously been litigated between the parties. *Harris v. Washington*, 404 U.S. 55, 30 L. Ed. 2d 212, 92 S. Ct. 183 (1971).

is the use of unlawful force or violence upon, or imparting fear of injury to the victim. *State v. McDonald*, 74 Wn.2d 141, 443 P.2d 651 (1968). We find the acts of force necessary to commit the robbery of Mark Medearis to be the same as the acts of force inflicted upon him as alleged in the count charging assault in the second degree. The litany of injuries inflicted upon the victim was part of a continuing, uninterrupted attack to secure "dope" or money, and constituted proof of an element included within the crime of robbery. Under the evidence in this case, the assaults inflicted were not separate and distinct from the force required for the robbery. *State v. Smith*, 9 Wn. App. 279, 511 P.2d 1032 (1973). The *Smith* case points up the converse of the situation where the acts of force which constituted an element of the robbery there committed were different acts of force than those which constituted the assault. The evidence in this case indicates that there was no cessation of the infliction of fear and injury upon the victim and a later resumption of a separate and distinct act of violence. The purpose of the acts of the defendant was the single purpose of effectuating the robbery of the victim. Where an act constituting a crime also constitutes an element of another crime, a defendant is placed in double jeopardy if he is charged with both crimes. *State v. Johnson*, 60 Wn.2d 21, 371 P.2d 611 (1962). Though we are not concerned with the provisions of the California statute discussed in *Ex parte Chapman*, 43 Cal. 2d 385, 273 P.2d 817 (1954), the rationale of the case is persuasive. It was there held that where an act of force or violence is proven as an essential element of the crime of robbery, such force and violence could not also constitute a separate crime—only one punishment being appropriate for a single criminal act. *State v .Waldenburg*, 9 Wn. App. 529, 513 P.2d 577 (1973); *People v. Gilbert*, 214 Cal. App. 2d 566, 29 Cal. Rptr. 640 (1963). Under the pleadings and the proof presented, the conviction of assault in the second degree based upon the force used to accomplish the robbery of Mark Medearis must be set aside.

SENTENCING

The fourth claim of the defendant sets forth a number of allegations that the court erred in imposing consecutive sentences totaling 50 years for two counts of robbery and one count of assault. We have indicated that the defendant's conviction and sentence for second-degree assault cannot stand, and therefore we need consider only the defendant's arguments as challenging the imposition of two consecutive 20-year sentences for robbery. The defendant contends: (1) the imposition of his sentence was cruel and unusual punishment in violation of the eighth amendment to the United States Constitution and article 1, section 14 of the Washington State Constitution, in that the imposition of the sentences was an abuse of discretion, and (2) the sentences imposed upon the codefendant Archie and the defendant Bresolin were disparate in length and so violated the equal protection clause of the fourteenth amendment to the United States Constitution.

■■ The conviction for second-degree assault having been set aside, the Board of Prison Terms and Paroles must reevaluate the minimum term of imprisonment to be served by the defendant. Thus, the actual duration of the defendant's confinement cannot be determined at this time. Any claim relating to cruel and unusual punishment because of the length of proposed confinement is premature, therefore. *State v. Fairbanks*, 25 Wn.2d 686, 171 P.2d 845 (1946); *State v. Floyd*, 11 Wn. App. 1, 521 P.2d 1187 (1974); *State v. Hurst*, 5 Wn. App. 146, 486 P.2d 1136 (1971). In addition, RCW 9.95.010 provides that the trial court has the authority to sentence for robbery to any term of years, including life. RCW 9.92.090 provides that the court may in its discretion sentence a defendant to consecutive terms. A trial court acts within its authority when sentence is imposed pursuant to the statutes. Though the length of the sentence imposed might be looked upon by some as harsh and by others as justified, the issue before us is whether the punishment is cruel and unusual. We hold that it is not in light of all the circumstances, including the

violence of the crimes committed and the possibility in fact of mitigation of the sentence in the future by the Board of Prison Terms and Paroles. As stated in *State v. Rose*, 7 Wn. App. 176, 183, 498 P.2d 897 (1972), *cert. denied*, 414 U.S. 835 (1973):

> The constitutional impediments to types of punishment are limited to cruel or unusual punishment—not harsh punishment. U.S. Const. amend. 8; Const. art. 1, § 14. All punishment by confinement in a penitentiary is harsh in the sense that it is strongly unpleasant to the person upon whom it is inflicted.

■ The defendant also contends the trial court abused its discretion in imposing the sentence. In *State v. Harris*, 10 Wn. App. 509, 513, 518 P.2d 237 (1974), the court stated:

> When criminal penalties are not fixed by statute other than by establishing maximum and minimum terms of servitude, and where probation is an available alternative to imprisonment, a trial judge must necessarily exercise judicial discretion when imposing sentence. Conceptually, the function of the exercise of judicial discretion may logically be reviewable only to determine if there has been an abuse of the discretionary prerogative. *State v. Douglass*, 66 Wash. 71, 118 P. 915 (1911). This is true because the exercise of discretion necessarily reflects the personal judgment of the court. *Cf. State v. Potts*, [1 Wn. App. 614, 464 P.2d 742 (1969)]. An appellate court can properly find an abuse of discretion only if "it can be said no reasonable man would take the view adopted by the trial court." *State v. Hurst*, 5 Wn. App. 146, 148, 486 P.2d 1136 (1971).

As an apparent claim of error in the difficult to follow brief filed pro se by the defendant, it is contended that the record does not reflect that the defendant committed the acts as stated by the judge. It is true that in imposing sentence, the facts relied upon by the trial court must have some basis in the record. *State v. Short*, 12 Wn. App. 125, 528 P.2d 480 (1974); *State v. Buntain*, 11 Wn. App. 101, 521 P.2d 752 (1974). However, we find that the trial court could reasonably conclude that the facts were as stated.

The defendant also contends that the trial court did not understand the prosecuting attorney's recommendations. The record reflects, rather, that the court was aware of the State's recommendation and exercised its discretion in not following it. We find this contention to be without merit.

■■■ The defendant argues finally, as to his sentence, that the disparity in the sentence received by the codefendant Archie and by Bresolin violated the defendant's right to equal protection. It is said in *State v. Hurst, supra* at 149:

Inappropriate disparity in sentencing is a serious problem for the criminal justice system and results in justified bitterness and lack of respect for the law by persons who have been the recipients of unequal sentences imposed out of lack of information or the failure of one court to be aware of what other courts in the same jurisdiction are imposing as sentences for similar offenses. S. Rubin, The Law of Criminal Correction 116-19 (1963); President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts 23-5 (G.P.O. 1967). We cannot find, however, such an inappropriate disparity in the present sentence. Palmer's previous record of criminal convictions reveals one prior felony conviction for burglary in the second degree on August 15, 1959. This apparent difference in degree of prior criminal involvement furnishes a rational basis for differentiation in the maximum sentences, and we find for this reason there has been no violation of Hurst's constitutional rights . . .

Thus, the test for determining whether the disparity in sentencing between the two defendants is violative of equal protection is whether there is a "rational basis" for differentiation between the defendants. For an appellate court to apply this test, however, it is imperative that the record on appeal be complete. In this case, we have not been provided with the presentence reports of either Bresolin or Archie, or other information, if any, which the trial court had before it when passing sentence. We cannot tell from the record what formed the basis for the sentences imposed by

the trial court. In the absence of a complete record, the defendant's claim cannot be considered.

SEARCH AND SEIZURE—STANDING

The defendant's fifth claim of error challenges the trial court's failure to suppress evidence which had been seized as the result of an inventory search of the automobile in which the defendant was riding. Testimony at the hearing on the motion for suppression of the evidence established that on December 29, 1972, at approximately 11 p.m., two police officers stopped a blue 1962 Lincoln Continental automobile on the basis of information they had received that three robbery suspects were wanted on an outstanding warrant and were possibly driving a vehicle of this description. When the car was stopped, the occupants, Bresolin and Archie, were placed under arrest and shortly thereafter the entire automobile was searched. The officers found, among other things, an H & R "handy" gun, a knife, a black leather jacket, and a ski mask.

 The State initially contends that since Bresolin was only a passenger in the automobile he does not have standing to object to the search. Where evidence is gathered as a result of a search directed at someone else, an accused does not have standing to contest the seizure of evidence secured by a search which did not invade his privacy, but only that of another. *Jones v. United States*, 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, 78 A.L.R.2d 233 (1960). Where, however, a person is a passenger in an automobile with the consent of the driver, he is legitimately on the premises and may by proper motion and proof present the issue of whether there was an invasion of his personal right of privacy as a result of an alleged unreasonable search and seizure. *Brown v. United States*, 411 U.S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565 (1973); *Alderman v. United States*, 394 U.S. 165, 22 L. Ed. 2d 176, 89 S. Ct. 961 (1969); *Jones v. United States, supra*; *State v. Michaels*, 60 Wn.2d 638, 374 P.2d 989 (1962); *State v. Hink*, 6 Wn. App. 374, 492 P.2d 1053 (1973); *State v. Osborn*, 200 N.W.2d 798, 806 (Iowa 1972). *See* J. Cook, *Constitutional Rights of the*

*Accused: Pretrial Rights* §§ 75-79 (1972, Supp. 1974); E. Fisher, *Search and Seizure* §§ 55, 56 (1970, Supp. 1972); B. George, *Constitutional Limitations On Evidence In Criminal Cases* 123-27 (1973); E. Cleary, *McCormick's Handbook of the Law of Evidence* § 179 (2d ed. 1972); Gutterman, *"A Person Aggrieved": Standing to Suppress Illegally Seized Evidence in Transition*, 23 Emory L.J. 111 (1974); White & Greenspan, *Standing to Object to Search and Seizure*, 118 U. Penn. L. Rev. 333 (1970).

## AUTOMOBILE SEARCH

██ We turn to the issue of reasonableness of the search of the vehicle. The State urges that it was reasonable to search the vehicle following the arrest of the defendants prior to its being impounded. There is no challenge to the lawfulness of the arrest of the defendants. The arresting officers had been informed that there were outstanding warrants for the arrest of three men driving a 1962 light blue Lincoln Continental, license number OMD 101. The description and license number had been reported, following the robbery, by the neighbor of Medearis. After the defendants were arrested, a complete inventory of the contents of the entire automobile was made prior to its being impounded. In *State v. Montague*, 73 Wn.2d 381, 385, 438 P.2d 571 (1968), we find:

> When, however, the facts indicate a lawful arrest, followed by an inventory of the contents of the automobile preparatory to or following the impoundment of the car, and there is found to be reasonable and proper justification for such impoundment, and where the search is not made as a general exploratory search for the purpose of finding evidence of crime but is made for the justifiable purpose of finding, listing, and securing from loss, during the arrested person's detention, property belonging to him, then we have no hesitancy in declaring such inventory reasonable and lawful, and evidence of crime found will not be suppressed.

We hold the impoundment of the vehicle to have been lawful. The vehicle had been used in the commission of a violent felony, two of three suspects had just been arrested,

and had it not been impounded it would have been left unprotected on the public street at night, fair game for the third suspect or others. *State v. Singleton*, 9 Wn. App. 327, 511 P.2d 1396 (1973), sets forth a number of situations which illustrate reasonable cause for impounding a vehicle. We hold it also reasonable to impound a vehicle under the circumstances present in this case. There existed valid cause to believe that the arrested defendants would not be able to return for the vehicle within the near future, that leaving the vehicle would not only subject it to the threat of vandalism or theft, but also would have left it open for possible use by the third suspect, and that responsible action required that the vehicle be kept safe by impoundment rather than abandoned. The vehicle search, coming immediately after the lawful arrest and just prior to the impoundment thereof, was reasonable and practical. As noted in *State v. Gluck*, 83 Wn.2d 424, 428, 518 P.2d 703 (1974):

> While we have long recognized inventory searches as a practical necessity, *State v. Montague*, 73 Wn.2d 381, 438 P.2d 571 (1968) . . . , we have also insisted that they be conducted in good faith for the purposes of (1) finding, listing, and securing from loss during detention, property belonging to a detained person, (2) protecting police from liability due to dishonest claims of theft, and (3) protecting temporary storage bailees against false charges.

(Citations omitted.) The record in this case supports the trial court's admission of the evidence, which entails a concomitant conclusion that the inventory search was conducted in good faith. The record is likewise clear that the arrest of the defendants was not trumped up on a pretext to search the vehicle, but occurred on the basis of warrants for the arrest of the occupants of the specifically described vehicle. The impoundment and inventory search of the vehicle was justified under the circumstances. *State v. Glasper*, 84 Wn.2d 17, 523 P.2d 937 (1974).[5]

---

[5]Though not argued to the trial court and the record lacking on the subject, the search of the automobile apparently could have been justified as incident to the felony arrest. It was conducted on the public

401

The conviction of the defendant on the included offense of assault in the second degree and the sentence based thereon is set aside. The judgment and sentence of the defendant is affirmed as modified.

WILLIAMS, C.J., and ANDERSEN, J., concur.

Rehearing by Court of Appeals pending December 23, 1975.

street immediately after the arrest with the arrested defendants still on the spot and another at large. *See Cardwell v. Lewis,* 417 U.S. 583, 41 L. Ed. 2d 325, 94 S. Ct. 2464 (1974); *Cady v. Dombrowski,* 413 U.S. 433, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973); *Chambers v. Maroney,* 399 U.S. 42, 26 L. Ed. 2d 419, 90 S. Ct. 1975 (1970); *Preston v. United States,* 376 U.S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881 (1964); *State v. Smith,* 9 Wn. App. 309, 511 P.2d 1390 (1973).