[No. 843-3. Division Three. April 25, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT G. BUNTAIN, *Appellant*.

*Ronald F. Whitaker* (of *Walters & Whitaker*), for appellant.

*Lincoln E. Shropshire, Prosecuting Attorney,* and *Robert B. Royal, Deputy,* for respondent.

MUNSON, J.—The defendant appeals from a judgment and sentence upon his plea of guilty to three counts of grand larceny.

On December 29, 1972, the deputy prosecuting attorney of Yakima County filed an information containing three counts, alleging that the defendant on the 17th day of May, 1972, did willingly, knowingly and feloniously receive, aid in concealing, or withholding, 19 head of cattle, knowing them to have been stolen, and with intent to deprive the owner thereof. The cattle were the property of three different individuals who resided in three counties other than Yakima County. At his arraignment, defendant, with his retained counsel present, entered a plea of guilty to all counts. A presentence investigation was ordered.

The presentence investigation was returned to the court and the prosecuting attorney. A copy was either read by, or provided to, defendant's counsel. Subsequently, the defendant filed a motion for an order "striking portion of pre-sentence investigation report," asking that all portions of the report "that refer to rumored activity of the defendant or refer to him being a suspect or possible suspect in connection with other crimes, . . ." be stricken. The import of the motion was that the criticized portions be stricken and the report be rewritten, eliminating those portions.

On the same date, defendant filed a motion for change of venue or, in the alternative, for a visiting judge to preside

over the sentencing. This motion was supported by an affidavit of defense counsel, stating:

That I am the attorney for the above named defendant. That the above named defendant is charged in three counts with receiving stolen cattle, to which he has entered pleas of guilty.

Approximately two years ago Judge Walter Stauffacher of the above entitled court granted probation to a man charged with cattle theft. Promptly thereafter letters to the editor were published in the Yakima Herald-Republic criticizing the judge for his actions. Your affiant is informed by Judge Stauffacher that he also received phone calls and was requested to appear before a meeting of the Cattlemen's Association to explain his actions in granting probation.

Recently articles have appeared in the Yakima Herald-Republic concerning cattle rustling. Attached hereto are copies of articles dated November 10, 1972, November 30, 1972, January 27, 1973, February 21, 1973 and February 22, 1973.

Your affiant has been informed by Earl Nedrow of the Regulatory Division of the Department of Agriculture that the Cattlemen's Association wants to be notified as to the date Mr. Buntain is to be sentenced so they can show up in strength. Thus it would appear that the judge sentencing Mr. Buntain is going to be confronted with a courtroom full of cattlemen.

Mr. Martin Secondo, who wrote the pre-sentence investigation report, has informed your affiant that he, Mr. Secondo, was informed by Mr. Nedrow of the pressure being put on by the Cattlemen's Association, and hence the reference to cattle ranchers in the pre-sentence investigation report.

In view of the past conduct of the Cattlemen's Association in connection with Judge Stauffacher, the newspaper articles and the planned show of strength in court, a Yakima County judge would be faced with an intolerable situation and could expect criticism and ridicule if he did anything other than sentence Mr. Buntain to the Department of Institutions.

The news articles attached to the affidavit were as follows: (a) The November 10 article related to the dismissal of a local resident on a charge of grand larceny involving

the possession of seven head of stolen cattle. The dismissal came after the accused had undergone a polygraph examination. (b) The November 30 article related to a "crackdown on rustlers" in Bakersville, Kern County, California. (c) An article dated December 19, 1972, not referred to in the affidavit, related to the theft of approximately 80 head of cattle. (d) The January 27 article related to two local cattlemen who had posted a $1,000 reward for the arrest and conviction of anyone stealing cattle and the return of the animals. (e) The February 21 article related to a meeting by members of the local cattlemen's association with the Washington State Agriculture Director on the problem of cattle rustling. (f) The February 22, 1972, news article referred to the high beef prices being in part responsible for an increase in cattle rustling. The article was datelined Point Reyes, California, and provided through the auspices of the Associated Press.

None of these articles pertained to the defendant nor to the particular activity with which he was charged.

The presentence investigation report referred to in the affidavit stated in part:

> Although this man may well complete a period of probation satisfactorily, I feel that other factors should be taken into consideration, the most important being the enormity of the crime committed and the general feeling of cattlemen in the community that the only way to stop this type of theft is by denying probation. My recommendation, therefore, is that Buntain be sentenced to the Department of Social and Health Services. In the event that the Court does place him on probation, it is recommended that the following be included in the Court Order: . . .

Defendant's motions and imposition of sentence were consolidated for hearing. At the hearing, defendant asked that those members of the cattlemen's association present in the courtroom stand for the purpose of a head count. The court declined, commenting that it would assume the majority of those in attendance were either members of the cattlemen's association or cattlemen.

The court noted that the portion of the presentence investigation report to which defendant objected was based upon hearsay and rumor, derived from a law enforcement intelligence report, and related to informers' reports that defendant had been involved in other thefts. It observed there was nothing to document those statements and stated it would eliminate and disregard them.

As to the motion for change of venue, or in the alternative for a visiting judge to sit for the purpose of imposing sentence upon the defendant, the court stated that it would not be influenced either by the prior happenings or the presence of the cattlemen. Both motions were denied.

In sentencing the defendant, the court noted defendant had pleaded guilty to not one but three charges, indicating "a commercial activity." Additionally, three other felony thefts had been admitted by defendant, including two John Deere mowers from separate cemeteries and a saddle from a ranch. A sentence of 15 years on each count, to run concurrently, was imposed. Defendant appeals.

 Plaintiff moved to dismiss this appeal, urging that this court has no jurisdiction to consider an appeal from a judgment and sentence entered upon a plea of guilty. A plea of guilty precludes an appeal, except as to collateral questions. *State v. Saylors*, 70 Wn.2d 7, 422 P.2d 477 (1966). The issues now raised relate solely to facts and circumstances which arose subsequent to the entry of the plea. They involve substantial questions surrounding the sentencing portion of this criminal proceeding. Thus, we deem them collateral questions from which an appeal is proper. The motion to dismiss is denied.

Defendant's first assignment of error alleges the court erred in denying his motion to strike portions of the presentence investigation report referring to other rumored criminal activity by defendant. While the defendant did not deny the accusations, the statute of limitations had run on most, if not all, of the suspected activity. No charges appear to have been filed on any of the rumored activities.

■ A trial judge, about to impose a criminal sentence, is not to be narrowly confined in his attempt to learn as much as is available about the circumstances of the crime, the defendant's past life, and his personal characteristics. Present-day thought contemplates tailoring the sentence to the individual, not the specific crime. *Williams v. New York*, 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949); *United States v. Weston*, 448 F.2d 626 (9th Cir. 1971), *cert. denied*, 404 U.S. 1061. To require the rules of evidence, including the right of cross-examination, to apply to this stage of the proceeding would unduly hamper the administration of justice. However, the scope of the inquiry is not limitless; there must be concern for the probable accuracy of the information gathered for this purpose. *United States v. Tucker*, 404 U.S. 443, 30 L. Ed. 2d 592, 92 S. Ct. 589 (1972); *Specht v. Patterson*, 386 U.S. 605, 18 L. Ed. 2d 326, 87 S. Ct. 1209 (1967); *Williams v. Oklahoma*, 358 U.S. 576, 3 L. Ed. 2d 516, 79 S. Ct. 421 (1959); *Williams v. New York*, *supra*; *United States v. Picard*, 464 F.2d 215 (1st Cir. 1972); *State ex rel. Woodhouse v. Dore*, 69 Wn.2d 64, 71, 416 P.2d 670 (1966); *State v. Harris*, 10 Wn. App. 509, 518 P.2d 237 (1974); *State v. Skinner*, 3 Wn. App. 367, 475 P.2d 129 (1970).

No contention is made that defendant was denied an opportunity to view the presentence report, or to be heard in defense, refutation, or explanation of the portion of the presentence report here challenged; nor is there an assertion that the sentence imposed was based upon misinformation. Further, the trial judge specifically excluded from his consideration those portions of the report here in issue. No error of constitutional magnitude is raised in the context of the facts in this case. The court did not abuse its discretion in denying defendant's motion to strike.

Defendant's other assignment of error relates to the failure of the court to grant his motion for change of venue, or in the alternative to allow a visiting judge to preside at the time of sentencing. Defendant does not allege the trial

judge had any bias or prejudice against him, that he had any personal interest in the proceeding, or that he was influenced by the cattlemen's presence. The narrow issue raised is whether the sentencing process failed to satisfy the requirement of "the appearance of fairness or justice."

That "justice must satisfy the appearance of justice" is a concept embraced by both federal and state courts. *Offutt v. United States*, 348 U.S. 11, 14, 99 L. Ed. 11, 75 S. Ct. 11 (1954); *see Mayberry v. Pennsylvania*, 400 U.S. 455, 27 L. Ed. 2d 532, 91 S. Ct. 499 (1971); *In re Murchison*, 349 U.S. 133, 99 L. Ed. 942, 75 S. Ct. 623 (1955); *Fleming v. Tacoma*, 81 Wn.2d 292, 502 P.2d 327 (1972); *State v. Stiltner*, 80 Wn.2d 47, 491 P.2d 1043 (1971); *State v. Madry*, 8 Wn. App. 61, 504 P.2d 1156 (1972); *see also Ward v. Monroeville, Ohio*, 409 U.S. 57, 34 L. Ed. 2d 267, 93 S. Ct. 80 (1972).

Defendant makes it clear that he is not directing his assignment of error to the specific judge involved; rather, he urges that the "electrified atmosphere" surrounding the sentencing proceeding was so evident that the proceeding lacked an appearance of fairness. Explicit guidelines on such a question are difficult to verbalize. *United States v. Zarowitz*, 326 F. Supp. 90 (C.D. Cal. 1971). " 'Appearance' is the act of appearing, . . . becoming visible . . . to apprehension of the mind, of being known as subject of . . . comprehension, . . ." Black's Law Dictionary 125 (4th ed. 1951). As stated in *Smith v. Skagit County*, 75 Wn.2d 715, 741, 453 P.2d 832 (1969):

> The test of fairness, . . . on matters of public interest, . . . is whether a fair-minded person in attendance . . . could, at the conclusion thereof, in good conscience say that everyone had been heard who, in all fairness, should have been heard and that the . . . body required by law to hold the hearings gave reasonable faith and credit to all matters presented, according to the weight and force they were in reason entitled to receive.

■ To examine appearance requires looking to the objective facts and circumstances giving rise to how something is perceived. Whether the appearance of fairness or

justice was accorded cannot be resolved by examining only the subjective feelings of an interested party, *Wolfson v. Palmieri*, 396 F.2d 121 (2d Cir. 1968); yet, they should be considered. Thus, a trial judge presented with this issue must project his thinking to an overview of the entire proceeding and determine, prospectively, how it would appear to a reasonably prudent disinterested person. *Fleming v. Tacoma, supra; State v. Madry, supra.* He is not to decide the issue solely on his personal feelings or knowledge. The appellate court in reviewing his decision has the benefit, if the motion is denied, of hindsight and can then apply the test set forth above in *Smith v. Skagit County, supra.*

The cattlemen had a right to attend this, or any other proceeding in open court. *Cf. State v. Collins*, 50 Wn.2d 740, 746, 314 P.2d 660 (1957); *State v. Gaines*, 144 Wash. 446, 462, 258 P. 508 (1927). While the defendant refers in his brief to "the electrified atmosphere of a courtroom filled with cattlemen . . ." the electrification phenomena is not articulated nor supported. There is no contention that the cattlemen did anything other than appear in the audience section of the courtroom. They made no utterances or gestures. No attempt was made to see the judge prior to convening court. Assuming arguendo that their self-interest would be duly noted by all present, we do not ascribe that their mere presence gave rise to an appearance of injustice or unfairness. If this were the rule, the mere presence at this stage of a criminal proceeding of the victims of a crime could support a similar claim of prejudice. We cannot attribute to trial judges such lack of objectivity.

The news articles do not contain references to this defendant. The subject of cattle thefts is one of wide concern, not restricted to the locale of this proceeding. Three of the articles preceded and three were subsequent to the time the defendant was charged and later pleaded guilty. News media consistently report on various criminal activities; before prejudice is shown such articles must refer to a particular defendant with more specificity.

Also, the fact that another judge "came under fire" for his decision in a similar case does not indicate an influencing factor in this case.

While the defendant and his counsel may have had intuitive apprehension, they do not infer that the judge was influenced or intimidated by any, or a combination of any, of the circumstances then before him. On this record, we find that a reasonably prudent disinterested person attending this proceeding would perceive the appearance of fairness and justice, and that the defendant was accorded fundamental fairness.

Judgment is affirmed.

GREEN, C.J., and MCINTURFF, J., concur.

Petition for rehearing denied June 21, 1974.

Review denied by Supreme Court October 7, 1974.