[No. 3337–2. Division Two. July 13, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. BRIAN
JOEL BOLTON, *Appellant.*

*John S. Abolofia,* for appellant.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

REED, J.—Brian Bolton appeals from a 10-year sentence imposed on his plea of guilty to negligent homicide, RCW 46.61.520. On appeal defendant does not seek reversal of his conviction; he requests only that the matter be remanded for resentencing.

The issues raised on appeal are: (1) that defendant was given no meaningful opportunity to rebut certain disputed facts relied upon by the judge in imposing a prison sentence; (2) that the sentencing violated the "appearance of fairness" doctrine; and (3) that the judge abused his discretion by not granting probation. For the reasons which follow we resolve all issues against defendant and affirm the judgment and sentence.

In the early morning hours of July 5, 1977, defendant's vehicle struck a person standing on the shoulder of Nyanza Road near Gravelly Lake in Pierce County. The victim sustained severe injuries and died 6 days later. Defendant was charged with negligent homicide, RCW 46.61.520, and with failing to stop and render assistance, RCW 46.52.020. On December 14, 1977, after extensive plea bargaining, defendant was permitted to plead guilty to an amended information which charged only negligent homicide.

The matter came on for sentencing on February 6, 1978. At that time the prosecuting attorney—honoring the plea bargain—joined with defense counsel in requesting a deferred sentence and probation as recommended in a presentence report. The presentence report, supplemented by the remarks of the prosecuting attorney, presented the following version of the accident to the sentencing judge: several witnesses at the scene would have testified that defendant's vehicle did not stop after the accident but sped off "very quickly." Defendant never did return to the scene. The victim was thrown approximately 80 feet and sustained badly broken legs and deep head lacerations. A passenger in defendant's car sustained severe head and eye injuries

which required hospitalization. Some 4 hours later defendant telephoned police officers and reported he had collided with a parked car. In subsequent conversations with the police, however, he maintained he did not know what he had hit, although he knew he had hit something. Defendant had just departed from a Fourth of July party at a nearby residence where he admitted to having consumed some beer. At the time of his interrogation defendant had a blood alcohol reading of .12. Expert testimony would have established that his blood alcohol level at the time of the accident was between .16 and .20.

Defendant's attorney told the court that the other party guests would testify, although defendant was "slurring some words," he did not appear to be under the influence of alcohol as he drove from the party. Defense counsel further stated that defendant had pleaded guilty because, in defendant's words, "I had been drinking. I obviously operated the car in a negligent manner and I'm guilty. I don't want to put the [victim's] family through trial." Defendant's own version of the accident was as follows:

In all honesty, I sincerely had no idea what I hit that evening, not even a car. I was so confused and shaken by the whole ordeal. I did make a U–turn on that road. My house is four blocks from the accident and I wouldn't be going around Gravelly Lake Drive. It would take about 20 minutes to be going around the lake. . . .

I had no idea that I struck a person. I would have stopped if I would have hit a dog. I would have stopped for a dog. I had no idea I hit a young man. I had no idea.

I did make a U–turn. And even though witnesses did not see the car make a U–turn on that road, there would be no point in our going around the lake, absolutely no point at all if I lived four minutes away from the accident.

Based on this information the judge imposed the statutory maximum prison term of not less than 10 years, stating *inter alia* as follows:

This is a terrible tragedy, and more sad than anything in this situation is the fact that we don't have just one

victim. We have this boy's parents, and believe me, gentlemen, I know what those people are going through.

The thing that is disturbing to this Court is that Mr. Bolton struck something; he did not know what it was. The next thing that is disturbing is that four hours after this incident, Mr. Bolton had a blood alcohol reading of .12. As your attorney can advise you, you are presumed affected by or under the influence of alcohol with any reading over .10. But this is four hours after the incident.

I practiced law for a long time . . . and received phone calls from [clients] in the Pierce County jail or the city jail. And they have the courage to tell you the next morning that they only had a couple of beers, and they can hardly utter a sentence, let alone make any sense.

I am satisfied that what is demonstrated here is an individual who is grossly affected by alcohol, who had no business at all driving an automobile. An automobile in the hands of such a person is just like a weapon. I am satisfied that you should have stopped immediately; that to strike something, not knowing what you struck and to keep on going— . . . demonstrates to me callous disregard.

Having previously been assured by his counsel that there was little or no likelihood the court would not follow the terms of the plea bargain and grant probation, defendant filed separate motions for reconsideration of his sentence and to withdraw his guilty plea. CrR 7.1(c). These motions were argued and denied on February 14, 1978. At that time defense counsel informed the sentencing judge:

I will file, your Honor, the notice of appeal . . . appealing only the limited issue of the sentence and the failure of the court to adopt any plea bargain that may have been reached.

In fact, the latter issue was neither raised in defendant's brief nor argued on appeal and it apparently has been abandoned.[1]

---

[1]We have previously held that our state trial judges need not permit withdrawal of an otherwise voluntary guilty plea merely because they elect not to follow the plea bargaining recommendations of the prosecuting attorney. *In re Hughes,* 19 Wn. App. 155, 575 P.2d 250 (1978). When a guilty plea has been entered and accepted in compliance with constitutional requirements and CrR

Defendant's first contention on appeal is that he was denied due process at sentencing because the judge improperly considered the "hit and run" charge which had been dismissed. The argument is that the judge resolved a serious factual issue against the defendant without providing him with a meaningful opportunity to rebut the charge.[2] We do not agree.

In *Williams v. New York,* 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949), the United States Supreme Court held that due process does not require that information relied upon at sentencing be "restricted to that given in open court by witnesses subject to cross–examination." *Williams v. New York, supra* at 250. The *Williams* court approved the use of hearsay matters contained in a presentence report; in that case the defendant did not dispute the accuracy of the information nor request the opportunity to refute it. In *State v. Short,* 12 Wn. App. 125, 528 P.2d 480 (1974), Division One of this court states at page 131:

> The absence of the opportunity to cross–examine the named and frequently unnamed persons whose statements are included in the [presentence] report does not prohibit its use by the sentencing judge. *Williams v. New York,* 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949); *State v. Buntain,* 11 Wn. App. 101, 521 P.2d 752 (1974). Nor is it improper for the sentencing judge to consider

---

4.2(f), the imposition of a more severe penalty than was bargained for does not constitute a "manifest injustice," *cf. State v. Taylor,* 83 Wn.2d 594, 521 P.2d 699 (1974).

[2]Defendant's brief frames the issue as follows:

"As a threshold matter, it is important to note what is *not* involved in this appeal. This court is not being asked to review the propriety of the court below taking into consideration the charge of hit and run despite the fact that the charge had been dismissed by the state. . . .

. "Nor is this court being asked to review on this appeal the propriety of the court below taking into account *any* factor, the accuracy of which is not disputed by the defendant.

"What is involved in this appeal is the right of a defendant to at least minimum safeguards to insure that the sentencing court does not rely on erroneous factual information when assessing sentence."

unsworn statements of a prosecuting witness at the sentencing hearing. *State v. Williams,* 51 Wn.2d 182, 316 P.2d 913 (1957). The procedural requirements of due process are satisfied if the convicted felon is apprised of the facts and charges in the report, *State ex rel. Woodhouse v. Dore,* 69 Wn.2d 64, 416 P.2d 670 (1966), and is given the opportunity to rebut allegations therein, if those allegations are considered by the sentencing judge. In *United States v. Espinoza,* 481 F.2d 553, 556 (5th Cir. 1973), the court held:

> [I]t has . . . been widely recognized that where a sentencing judge *explicitly relies* on certain information in assessing a sentence, fundamental fairness requires that a defendant be given at least some opportunity to rebut that information.

*Accord, State ex rel. Woodhouse v. Dore, supra; Collins v. Buchkoe,* 493 F.2d 343 (6th Cir. 1974); *United States v. Battaglia,* 478 F.2d 854 (5th Cir. 1972); *United States v. Carden,* 428 F.2d 1116 (8th Cir. 1970).

The record in this case totally belies defendant's contention that he had no meaningful opportunity to rebut the allegations that he failed to stop or return to the scene. In fact, he was afforded two such opportunities. Having received a copy of the presentence report he was surely aware these allegations would be a factor for serious consideration by the sentencing judge. Despite this fact, no effort was made on defendant's behalf to call witnesses on this issue, one of whom logically would have been defendant's passenger of that night. Rather, the defendant attempted to explain to the judge that it would have been circuitous and time consuming for him to continue around the lake with his badly injured passenger; *ergo,* defendant did stop and retrace his path. Nor did defendant avail himself of his second opportunity when he again appeared before the judge seeking a reconsideration of his sentence or withdrawal of his plea.

In these circumstances we fail to see how defendant was in any way deprived of his meaningful opportunity to rebut

the claim he did not stop or return to the scene of the accident. There was no denial of due process. *Cf. State v. Blight,* 89 Wn.2d 38, 42, 569 P.2d 1129 (1977).

Defendant next asserts that his sentencing lacked the "appearance of fairness," *In re Murchison,* 349 U.S. 133, 99 L. Ed. 942, 75 S. Ct. 623 (1955); *Offutt v. United States,* 348 U.S. 11, 99 L. Ed. 11, 75 S. Ct. 11 (1954); *Diimmel v. Campbell,* 68 Wn.2d 697, 414 P.2d 1022 (1966); *State v. Madry,* 8 Wn. App. 61, 504 P.2d 1156 (1972). Defendant argues that, unbeknownst to him or his counsel, the sentencing judge had lost a son in a traffic accident some 8 years before. Defendant claims the judge must have been reminded of his personal tragedy or at least subconsciously took it into consideration at sentencing. Defendant bases this upon the judge's statement that, "We have this boy's parents, and believe me, gentlemen, I know what those people are going through."

■ We will not address the merits of this issue because it is raised for the first time on appeal. From our examination of the record and the affidavits appended to defendant's brief, it is clear he made a tactical decision not to bring the matter to the attention of the sentencing judge. According to the affidavits of defendant and his counsel, the fact of the judge's personal tragedy came to light within 24 hours after the sentencing on February 6, 1978, when "10 or so people contacted Brian Bolton or his attorney" either by telephone or in person, asking why the judge had not been disqualified. According to one unidentified caller, the judge's son was the victim of a "drunk driver." Others, also unidentified, merely mentioned the son had been killed in a motorcycle accident. Nevertheless, none of this information is contained in either of defendant's post–sentence motions; both motions were subscribed on February 14, 1978, the date of the sentencing. Nor was the matter called to the judge's attention at the argument on the motions.

In addition, defendant sought an additional discretionary ruling from the very judge whom he now seeks to disqualify. Obviously defendant was willing to take his chances,

hope for a favorable decision and resort to the appearance of fairness argument only if he was unsuccessful. Clearly, in these circumstances defendant has waived any right to object to the qualifications of the judge or the fairness of the sentencing proceedings—whether actual or apparent— and cannot now raise such issue. *Cf. In re Carpenter,* 21 Wn. App. 814, 820, 587 P.2d 588 (1978); *Williams & Mauseth Ins. Brokers, Inc. v. Chapple,* 11 Wn. App. 623, 524 P.2d 431 (1974); *Brauhn v. Brauhn,* 10 Wn. App. 592, 518 P.2d 1089 (1974).

■ Finally, defendant contends the sentencing judge abused his discretion, *i.e.,* failed to exercise it by not "tailoring" his sentence to defendant as an individual. *Williams v. New York, supra; United States v. Weston,* 448 F.2d 626 (9th Cir. 1971); *State v. Buntain,* 11 Wn. App. 101, 521 P.2d 752 (1974). Defendant argues the judge refused to consider such factors as defendant's needs for reformation and society's need for protection from the defendant, *United States v. Daniels,* 446 F.2d 967 (6th Cir. 1971). Defendant stresses his lack of any criminal record, his expressions of remorse and mental depression, and the recommendation of the presentence report that "a jail commitment would be detrimental to the welfare of Mr. Bolton."

We have no quarrel with the rationale that sentencing should be geared or tailored to the individual and not *simply* to the offense. *Williams v. New York, supra.* This approach does not dictate that other relevant circumstances must be disregarded, however; factors such as current prevalence of the offense and the deterrence of others must be considered. Here the sentencing judge had a sufficient factual basis for believing the defendant had consumed more alcohol than he admitted. He also had a substantial basis for finding that, despite his knowledge his vehicle had collided with some object, defendant fled from the scene. There is also the fact that defendant transported his injured passenger to his home for medical treatment, a distance of only 4 blocks or 4 minutes away from the scene

and did not contact the authorities until some 4 hours later. The judge also expressed his belief that defendant's sentence would serve to deter others from driving while under the influence of alcohol.

This court cannot say that no reasonable man would have taken the view of the sentencing judge.[3] Therefore, we find no abuse of the broad discretion accorded to sentencing judges either to grant or deny probation as circumstances warrant. *State v. Blight, supra.* The judgment and sentence are affirmed.

PEARSON, C.J., and PETRIE, J., concur.

Reconsideration denied September 7, 1979.

Review denied by Supreme Court February 22, 1980.

---

[3]The judge refused to consider as an aggravating circumstance the fact the defendant had permitted his liability insurance to lapse shortly before the accident, despite suggestions that this omission evidenced a lack of responsibility. Thus, it is clear the judge was fairly exercising his discretion in light of all the circumstances.