[No. 7774–1–I.   Division One.   September 8, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. BROOK C. CUNNINGHAM, *Appellant.*

*William Johnston,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Charles Tull, Deputy,* for respondent.

SWANSON, J.—Only one issue is raised by this appeal— did the trial court abuse its discretion in sentencing the defendant Brook C. Cunningham to the Division of Institutions of the Department of Social and Health Services?

Brook Cunningham, an 18–year–old female, was convicted on stipulated facts of robbery in the first degree for

holding up a Bellingham gas station while armed with a .22 caliber pistol. The only defense at trial was diminished capacity. She claimed her consumption of drugs prior to the robbery prevented her from forming a specific intent to commit the crime. The court rejected this defense and found her guilty. She does not question the determination of guilt, only the sentence. And she does not challenge the court's authority to sentence her to the Division of Institutions but does question the process through which the court arrived at that sentence.

Cunningham bases her appeal on her interpretation of remarks of the trial judge concerning *State v. Workman*, 90 Wn.2d 443, 584 P.2d 382 (1978). *Workman* held that the enhanced penalty provision of the uniform firearms act, RCW 9.41.025, cannot be applied to the crime of first degree robbery where the crime was charged on the basis of use or possession of a deadly weapon.[1] This holding has been extended to prohibit the application of RCW 9.41.025 to enhance the penalty for any crime which necessarily requires proof of use or possession of a deadly weapon as an element of the offense. *State v. Gross*, 23 Wn. App. 319, 597 P.2d 894 (1979).

After the State had rested and before the defense presented its case, the trial judge here remarked that *Workman* had resulted in an anomaly in which RCW 9.41.025 could be used to require a mandatory prison term for a person convicted of a Class B felony but that a judge retained discretion to suspend or defer the sentence of a person convicted of a Class A felony in which possession or

---

[1]RCW 9.41.025 requires the sentencing judge to impose additional mandatory minimum sentences ranging from 5 to 15 years for a defendant who has committed or attempted to commit a felony or an inherently dangerous misdemeanor or gross misdemeanor while armed with or in possession of a firearm. The *Workman* court held, in the absence of clear legislative intent to the contrary, that principles of statutory construction prohibited the application of this enhancement provision to a charge of first degree robbery based on possession or use of a deadly weapon. *State v. Workman, supra* at 454–55.

use of a deadly weapon is an element of the offense.[2] The judge stated,

I will continue to take the position that I will not exercise . . . discretion [to suspend or defer sentences] in those cases where a firearm being involved is an element of the offense, . . . because I feel that it's somewhat anomalous that if you could be found guilty of a lesser crime with a special finding [of use or possession of a firearm under RCW 9.41.025] when you can do it, that wouldn't be violating Workman, that somebody would be having judicial discretion exercised for their benefit on a more serious crime.

After finding Cunningham guilty of the charge against her, the court remarked:

I might say in this case, it's a very difficult thing to do in view of the defendant's young age, but in view of the finding here and the nature of the crime, a presentence report probably would not be of any significance to the Court, if the purpose of a presentence report, of course, is to ask the Court to defer or suspend sentence or to ask for lesser time in the county jail, because my policy will be, since the State vs. Workman case where the State is left in the ridiculous position of having to charge the way they do, that any time a felony is proven and a firearm is involved, they're going to go to institutions. I made that clear this morning.

The court sentenced Cunningham to the Division of Institutions for a maximum term of 20 years. The following exchange then occurred between defense counsel and the court:

[DEFENSE COUNSEL]: Your Honor, if I might inquire from the Court, because the Court has spoken at great length about the Workman situation. For my client's

---

[2]For purposes of sentencing, felonies are divided into three classes: A, B, and C. RCW 9A.20.010(1)(b). First degree robbery, RCW 9A.56.200, and first degree assault, RCW 9A.36.010, are Class A felonies. Second degree robbery, RCW 9A.56.210, and second degree assault, RCW 9A.36.020, are Class B felonies. Class A felonies are punishable by a maximum prison term of not less than 20 years or a fine of not more than $10,000 or both. RCW 9A.20.020(a). Class B felonies are punishable by a maximum prison term of not more than 10 years or a maximum $10,000 fine or both. RCW 9A.20.020(b).

benefit and for the benefit of other people that I may represent who may come before the Court in a Class A felony situation with a firearm involved, is the Court saying that—

THE COURT: You can tell them if you come in front of me they're going to go to prison.

Cunningham contends on appeal that these comments demonstrate that the trial judge determined her sentence through a mechanical process that ignored her individual characteristics and the circumstances of her offense. She argues that such an approach to sentencing constitutes an abuse of judicial discretion and urges this court to vacate her sentence and either fix an appropriate sentence or remand this matter for resentencing before another judge.

■ As a prelude to discussing the issue raised by Cunningham, it is worthwhile to observe that "probation is not a right but a matter of grace, privilege, or clemency . . ." *State v. Potts,* 1 Wn. App. 614, 619, 464 P.2d 742 (1969). A trial court is given statutory authority to grant or deny probation, RCW 9.95.200, and the granting or revocation of probation is a matter almost exclusively within the trial court's discretion, *State v. Riddell,* 75 Wn.2d 85, 449 P.2d 97 (1968); *State v. Potts, supra.* Similarly, a trial court has broad discretionary power under RCW 9.92.060 to suspend sentences in all but certain types of cases. *See State v. Dainard,* 85 Wn.2d 624, 537 P.2d 760 (1975).

Although appellate courts are hesitant to intervene in the sentencing process, such intervention is sometimes necessary to prevent injustice. *State v. Langford,* 12 Wn. App. 228, 529 P.2d 839 (1974). "In reviewing an order denying the suspending of a sentence and the granting of probation, the question before the court is whether the trial judge abused his discretion." *State v. Dainard, supra* at 626. Discretion is abused only where it can be said no reasonable man would take a view adopted by the trial court. *State v. Derefield,* 5 Wn. App. 798, 491 P.2d 694 (1971).

■ With regard to the issue raised by Cunningham in this appeal, the Supreme Court has stated that

justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender.

*Pennsylvania ex rel. Sullivan v. Ashe,* 302 U.S. 51, 55, 82 L. Ed. 43, 58 S. Ct. 59 (1937). *See Williams v. New York,* 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079 (1949).[3] Except in capital cases, however, "the prevailing practice of individualizing sentencing determinations generally reflects simply enlightened policy rather than a constitutional imperative . . ." *Woodson v. North Carolina,* 428 U.S. 280, 304, 49 L. Ed. 2d 944, 96 S. Ct. 2978 (1976). Nevertheless, federal courts have vacated sentences on the ground that a mechanistic sentencing policy that considers only the crime committed constitutes an abuse of discretion, *e.g., United States v. Wardlaw,* 576 F.2d 932 (1st Cir. 1978), or a failure to exercise discretion, *e.g., United States v. Ingram,* 530 F.2d 602 (4th Cir. 1976). Although refusing recently to vacate a sentence on this ground, Division Two of this court observed: "We have no quarrel with the rationale that sentencing should be geared or tailored to the individual and not *simply* to the offense." *State v. Bolton,* 23 Wn. App. 708, 715, 598 P.2d 734 (1979).

We, likewise, are inclined to subscribe to the generally accepted view that punishment should be tailored to the individual and not simply to the offense, though we are not unmindful of the legislature's view regarding mandatory sentencing where a firearm is involved. *See* RCW 9.41.025. We do not wish, however, to enter into an extended discussion of the relative merits of individualized as opposed to mandatory sentencing. Here, the trial judge recognized the legislative attitude regarding sentencing and commented

---

[3]The merits of individualized sentencing are presented in National College of State Trial Judges, *Sentencing and Probation* 31–33 (1970). *See also ABA Standards Relating to Appellate Review of Sentences,* § 1.2, at 21 (Approved Draft, 1968); *ABA Standards Relating to Sentencing Alternatives and Procedure,* § 2.2(a), Commentary at 62–63 (Approved Draft, 1968).

upon it in discussing *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978), and the anomalous situation created by that case. A full reading of the record shows, however, that the court did not rest its sentencing decision solely upon its dissatisfaction with *Workman.*

The record shows, for example, that the trial judge gave great consideration to Cunningham's youth, telling her at one point, "I realize you're young and I realize some of the problems we hear face people when they are placed in institutions . . ." The judge also acknowledged reading letters from friends of Cunningham urging him not to send her to prison. The judge recognized that "the Court does have discretion so far as what I'm going to do . . ."

Against these mitigating factors, however, the court weighed Cunningham's drug usage and the deterrent effect that he implied a prison sentence would have on others:

[I]f I started adopting another standard in this Court, that 18 year olds, the very young ones aren't going to be going to these places because of their age, then there would be a significant percentage of our criminal defendants before our courts that wouldn't be going to prison, because it seems like it's this younger group of people getting wrapped up in drugs are the ones that are always before the Court for these offenses.

So I know the fact that she just turned 18, but this is not a very magic age as far as the Court is concerned in saying that, well, this is a person of tender years, if we speak in a criminal vein, and we're not going to send them to institutions, because, I hate to say this, but it's this drug situation that's just creating a lot of the problems as far as the young people are concerned, and they are the ones that are coming through the courts on these burglaries, assaults, you name it, very serious offenses.

So the Court cannot take that fact aside and say, well, in this case I feel that we should have a special disposition.

Foremost in the court's mind appeared to be the seriousness of Cunningham's offense. The judge expressed his concern over a note found in Cunningham's possession

(though not actually shown to the gas station attendant she robbed):

> This is a holdup, keep quiet, you will not be hurt. Take me seriously. I have a gun and I want all your money in the till. I will not hesitate to kill.

The court concluded:

> This is a pretty serious situation, and I just could not, under the circumstances, even though Brook is a young girl, even though she has a great deal of . . . friends and people who want to back her up, and I know that her father and everybody, they want to help in this thing, but the point is that this is a very, very serious offense, and the Court does not see how it could in judicial conscience do anything but to sentence you to institutions.

In considering the record as a whole, therefore, we are convinced that the trial judge did not abuse his discretion in sentencing Cunningham. The judge's observations regarding the *Workman* case notwithstanding, we are satisfied that he fulfilled his obligation to tailor the sentence to the individual and not simply to the crime. Individualized sentencing does not require that the trial judge disregard other relevant circumstances, including the current prevalence of the offense and the deterrent effect of the sentence. *State v. Bolton, supra.* Consequently, and in view of the wide discretion afforded a trial judge in matters of sentencing, we find that the trial judge here did not abuse his discretion in sentencing Cunningham to the Division of Institutions.

Affirmed.

CALLOW, C.J., and ANDERSEN, J., concur.

Reconsideration denied October 2, 1980.

Review granted by Supreme Court January 19, 1981.