**FILED**
**AUGUST 7, 2025**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Domestic Violence Protection Order for | ) ) ) ) | No. 39601-1-III |
| | ) | UNPUBLISHED OPINION |
| VIOLET JOHNSTON. | ) ) ) | |

MURPHY, J. — Eric Johnston appeals from a domestic violence protection order (DVPO). He claims: (1) the superior court commissioner erred in reissuing a temporary restraining order (TRO) after they had recused from the case, and (2) the superior court judge made comments on the record that they had not reviewed all documents in the court file prior to issuance of the DVPO. We disagree and affirm.

FACTS

On September 8, 2022, Violet Johnston petitioned for a DVPO against her father, Eric Johnston.[1] Violet alleged rape, instances of intimidation, threats, and fear for personal safety. A superior court commissioner entered an ex parte TRO on September 9, 2022, and set a full hearing on the petition for September 22. At the September 22 hearing, the parties agreed to a continuance and reissuance of the TRO in light of a parallel pending criminal proceeding against Eric.

---

[1] As the parties share a last name, for ease of reference we refer to them by their first names. No disrespect is intended by doing so.

On October 20, 2022, the commissioner granted another continuance, over Violet's objection, on the same basis articulated at the September 22 hearing.

Violet filed a motion to revise the commissioner's ruling. A superior court judge found that good cause existed to revise the commissioner's ruling and remanded the matter for a full review and analysis on the record of eight nonexclusive factors related to issuance of a DVPO during the pendency of a parallel criminal proceeding. *See Smith v. Smith*, 1 Wn. App. 2d 122, 130, 404 P.3d 101 (2017) (citing *King v. Olympic Pipe Line Co.*, 104 Wn. App. 338, 352-53, 16 P.3d 45 (2000)).

At the hearing on December 1, 2022, the commissioner heard arguments, reviewed the factors articulated in *Smith*, reissued the TRO, and continued the full hearing on Violet's petition to January 4, 2023.

Prior to the January 4 hearing, Violet and Eric submitted additional briefing and affidavits with documentary evidence in support of their positions. Eric's affidavit referenced a prior dissolution proceeding with Violet's mother, including a guardian ad litem (GAL) report, in support of his argument that any rape of Violet did not occur. Although referenced in the affidavit, neither the GAL report nor any of the other dissolution filings were included in Eric's filings in the DVPO proceeding. Additionally, pursuant to a motion filed by Eric's criminal defense attorney, interview transcripts from the pending parallel criminal case were filed.

2

At the January 4 hearing, the commissioner first addressed whether it was proper to consider the interview transcripts from Eric's parallel criminal proceeding and information from the dissolution proceeding. The commissioner stated access was gained to the dissolution file to review the GAL report because it was referenced in Eric's affidavit. Within the report, the GAL noted that they had reviewed the entire dissolution file, and for this reason the commissioner also reviewed the entire dissolution file, which included a prior petition for a DVPO filed by Violet's mother seeking protection for herself and Violet, and affidavits from the couple's three sons in support of the mother's petition.

After hearing argument from counsel on the appropriate scope of materials to review, the commissioner found they could properly consider the interview transcripts from Eric's pending criminal case but would only consider the documents from the dissolution proceeding that were specifically referenced or relied on by the parties in their filings in Violet's DVPO proceeding. Therefore, the court incorporated the GAL report into the record but the affidavits of the couple's three sons were not considered.

The parties then presented argument on the merits of the petition. The commissioner issued an oral ruling finding by a preponderance of evidence that Eric subjected Violet to domestic abuse. The commissioner stated their intention to issue the

DVPO for life but, to allow time for drafting the written order, reissued the TRO without objection, with the final hearing set for January 18.

At the January 18 hearing, the commissioner did not issue a final written order and instead sua sponte recused, stating:

> The problem is is that evidence [from the dissolution proceeding file] was not properly before the Court. And I mentally relied on it. I did. And that is not fair to [Eric]. I couldn't ignore it.
> At the time I issued my oral ruling [on January 4], I believed that I was fine because what I had was testimony. I had affidavits, describing the rape. I didn't have any evidence that [Violet] was lying, and I watched her demeanor and I believe her. But for me to issue this ruling saying that and saying that somehow I wasn't affected by what was really not admissible and that was the [dissolution proceeding] evidence, would be a lie. It would be going beyond disingenuous. And I thought about it for about two weeks. And I realize I did—I was influenced. And even though I made a decision at the hearing, we're not going to consider that because it's not properly before the Court, I did mentally consider it. I at least considered the [GAL] report and the parties agreed for me to consider that out of that [dissolution] file.
> So, once this Court got into the affidavits and the [dissolution] file and once I read them, and after we had the hearing, I—I was no longer neutral and detached. I had been exposed to information that I—I don't know if it influenced me. And as I say, I have an independent basis to issue the restraining order without question. But I just don't know how [Eric] would buy that . . . . So, it screams of an appearance of unfairness.
> So, even though I had a basis, I'm vacating my decision because there is a gross appearance of unfairness in reaching my decision.

Rep. of Proc. (RP) (Jan. 18, 2023) at 187-88. The commissioner vacated its January 4, 2023, oral decision and reissued the TRO for 30 days to allow for the reassignment of

another judicial officer to preside over a new hearing. Neither party objected to the reissuance of the TRO.

Thereafter, Violet supplemented the record with the GAL report and the affidavits from the dissolution file.

On March 15, 2023, a superior court judge held a full hearing on Violet's petition. The parties presented no further arguments and rested on their written submissions. The court reviewed the event timeline that had been developed through affidavits and other submissions by the parties in the DVPO action, and affidavits and the GAL report from the dissolution file. The judge noted that "a cursory review of all of the interviews" filed from the parallel criminal case were reviewed and offered further comments on the analysis of that information. RP (Mar. 15, 2023) at 202. The judge found Violet had established on a more likely than not basis that she needed domestic violence protection from Eric and issued a two-year DVPO.

The parties then inquired into whether the court would grant Violet's request that Eric surrender his weapons. In the context of discussing the current state of the law of the surrender of weapons, and the statement of counsel that Eric had turned over all firearms to a brother in Arizona, the court said "[g]ive me just a second" in the context of reviewing the record and determining the "context of things." RP (Mar. 15, 2023) at 208. The court took this opportunity to advise counsel, "for future reference," attaching

5

numerous and lengthy exhibits to declarations, especially e-mails of Eric's ex-wife and

text messages without context, this practice complicates a judicial officer's ability to

know who is talking and what is being offered. RP (Mar. 15, 2023) at 208. The court

suggested that an exhibit notebook, including references to the specific page numbers of

the exhibits within declarations to be able to go to the exact information being pointed

out, would be of assistance so that judicial officers would not be burdened by reading the

entire document simply to ascertain its relevance. The following conversation ensued:

> [ERIC'S COUNSEL]: I appreciate that, Your Honor. What I was going to tell you about though the suggestion of creating an exhibit notebook.
> THE COURT: Mm-hmm.
> [ERIC'S COUNSEL]: That's in our local court rule, but local attorneys have been advised by the other judicial officers that [if] it is not attached to the declaration, it will not be read. So, I think for the most part every—all the other attorneys that I know practicing particularly in a family law and DV context have been attaching them to declarations to make sure that they are read.
> THE COURT: They're not read anyway. I hate to break it to you.
> [ERIC'S COUNSEL]: Well that they wouldn't even be—
> THE COURT: But you have a whole lot of stuff attached to the declaration, I mean I take these and do the best I can with them—
> [ERIC'S COUNSEL]: I understand that.
> THE COURT: You know as many cases as we have and we get these stacks of papers. There's no way I can read a novel or two every docket day.
> [ERIC'S COUNSEL]: I'm just advising the Court as to—
> THE COURT: But if you have an exhibit notebook or where you put those in there, maybe on your actual—what you actually file in the court files, you reference that and maybe if you're going to feel compelled to attach it to support what you're saying in your declaration, you don't attach

the entire conversation start to end, but only that one blurb that you're
referencing. There has to be a better way—
        [ERIC'S COUNSEL]: I agree.

RP (Mar. 15, 2023) at 209-10. After reviewing the statute and determining Eric did not

present a credible threat, the court did not require the surrender of weapons. The court

issued a DVPO that same day.

Eric seeks review of the March 15, 2023, DVPO and, "pursuant to RAP 2.4(b),

any other orders prejudicially affecting the [court's] decision." Clerk's Papers at 258.

The DVPO was the only order appended to Eric's notice of appeal.

## ANALYSIS

*Whether the commissioner erred by reissuing the TRO after recusal*

Eric argues the commissioner's orders reissuing the TROs on December 1, 2022,

January 4, 2023, and January 18, 2023 are void, and the final DVPO must be vacated

because the appearance of fairness doctrine was violated when the commissioner first

reviewed the dissolution proceeding file. Violet argues that the commissioner's review of

the dissolution file prior to the hearing on the merits was not improper and did not

provide grounds for recusal until the court determined, albeit unnecessarily, its

impartiality could reasonably be questioned, which occurred a few days before the

January 18, 2023, hearing. Violet further responds that, even with the circumstance of the

7

commissioner's recusal, the January 18 TRO reissuance was proper because it was a statutorily required ministerial act.

As an initial matter, under RAP 2.5(a), an "appellate court may refuse to review any claim of error which was not raised in the trial court." Courts have applied the doctrine of waiver to appearance of fairness claims. *See In re Marriage of Wallace*, 111 Wn. App. 697, 705, 45 P.3d 1131 (2002); *State v. Bolton*, 23 Wn. App. 708, 714, 598 P.2d 734 (1979). However, a void judgment may be challenged at any time on jurisdictional grounds. *See Timberland Bank v. Mesaros*, 1 Wn. App. 2d 602, 606, 406 P.3d 719 (2017).

At no point in the DVPO proceedings did Eric affirmatively seek recusal of a judicial officer. Neither of the parties objected to any reissuance of the TRO. Eric's claims on appeal concern both the appearance of fairness doctrine as well as the court's authority to issue an order after recusal. Those arguments are largely unsupported and fail.

"Recusal is within the sound discretion of the court." *Kauzlarich v. Yarbrough*, 105 Wn. App. 632, 653, 20 P.3d 946 (2001). Due process, the appearance of fairness doctrine, and the Code of Judicial Conduct (CJC) require disqualification of a judicial officer who is biased against a party or whose impartiality may reasonably be questioned. *See In re Welfare of R.S.G.*, 174 Wn. App. 410, 430, 299 P.3d 26 (2013); CJC 2.11(A).

"'Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing.'" *Olympic Healthcare Servs. II, LLC v. Dep't of Soc. & Health Servs.*, 175 Wn. App. 174, 184, 304 P.3d 491 (2013) (quoting *In re Marriage of Meredith*, 148 Wn. App. 887, 903, 201 P.3d 1056 (2009)). "Evidence of a [judicial officer]'s actual or potential bias is required before the appearance of fairness doctrine will be applied." *State v. Dominguez*, 81 Wn. App. 325, 329, 914 P.2d 141 (1996).

Here, the commissioner recused on January 18, 2023, on the basis that they were "no longer neutral and detached" after reading the file from the dissolution proceeding. RP (Jan. 18, 2023) at 188. Eric argues that because the commissioner must have reviewed the dissolution file at some point between the October 20, 2022, and January 4, 2023, hearings, they were obligated to recuse before the December 1, 2022 hearing. Eric's timeline is incorrect. The commissioner stated they had reviewed the dissolution file after Eric referenced the GAL report in his affidavit. Eric filed that affidavit on December 30, 2022. The commissioner disclosed at the January 4, 2023, hearing, five days later, that they had reviewed the dissolution file. Therefore, the December 1, 2022, reissuance of the TRO was well before the commissioner's review of the dissolution file. Eric's claim that the TRO reissued on December 1, 2022, was void fails.

The January 4 oral decision was announced *after* the commissioner's review of the dissolution proceeding file. The commissioner voluntarily recused two weeks later at the January 18 hearing. Whether the commissioner should have recused on January 4 is a nonissue because that oral decision was never reduced to a written order.

Eric's argument that the court should have voided the January 4 order reissuing the TRO, and that the commissioner should not have reissued the TRO on January 18 after recusal, is unsupported by the law. This court has adopted the "bright line rule: once a judge has recused, the judge should take no other action in the case except for the *necessary ministerial acts* to have the case transferred to another judge." *Skagit County v. Waldal*, 163 Wn. App. 284, 288, 261 P.3d 164 (2011) (holding order denying motion for reconsideration and order granting sanctions entered by judge after recusal were not ministerial and reversed) (emphasis added); *see also In re Dependency of A.E.T.H.*, 9 Wn. App. 2d 502, 522, 446 P.3d 667 (2019) (reversing entry of written order terminating parental rights after recusal, holding it was not a ministerial act).

As to protection orders, Washington law requires that "[i]f the court continues a hearing for any reason, the court shall reissue any temporary orders." RCW 7.105.200(6). Here, when voiding its prior oral ruling and reissuing the TRO on January 18, the commissioner stated the renewal was made in order to "seek another judicial officer to preside over a new hearing." RP (Jan. 18, 2023) at 189. Given the circumstances,

10

reissuance was not only required by RCW 7.105.200(6), but was "in line with what Washington courts have previously considered as ministerial acts." Br. of Resp't at 10. Neither party offers argument or citation to the definition of "ministerial act."

In his reply brief, Eric contends the reissuance of the TRO was not a ministerial act but a substantive act, but cites no authority for this. In both his opening brief and reply brief, Eric makes numerous conclusory statements and provides little citation to authority relevant to the issues on appeal. "Passing treatment of an issue or lack of reasoned argument is insufficient to allow for our meaningful review." *State v. Stubbs*, 144 Wn. App. 644, 652, 184 P.3d 660 (2008), *rev'd on other grounds,* 170 Wn.2d 117, 240 P.3d 143 (2010).

Given the facts and circumstances in this case, and the law governing protection orders, requiring a commissioner to transfer the case to another judicial officer without reissuing the TRO would be contrary to the requirements of RCW 7.105.200(6) as a necessary ministerial act.

*Whether the court erred by failing to consider the entire record*

A court's decision to grant a DVPO is reviewed for abuse of discretion. *Davis v. Arledge*, 27 Wn. App. 2d 55, 63-64, 531 P.3d 792 (2023). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or

untenable reasons." *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

Eric contends the court erred by failing to consider the entire record before entering the DVPO, complaining the superior court's findings were not supported by substantial evidence. Br. of Appellant at 12. A trial court's findings of fact are reviewed for substantial evidence. *In re Vulnerable Adult Petition for Knight,* 178 Wn. App. 929, 936-37, 317 P.3d 1068 (2014). The substantial evidence standard does not permit the reweighing of evidence or reassessing witness credibility. *In re Welfare of X.T.*, 174 Wn. App. 733, 737, 300 P.3d 824 (2013). When reviewing whether there is substantial evidence to support an order, our court "need only consider [the] evidence favorable to the prevailing party." *Endicott v. Saul*, 142 Wn. App. 899, 909, 176 P.3d 560 (2008).

In support of his argument, Eric cites to CJC 2.5, with the conclusory comment that "[c]ursory review is hardly meaningful review and does not satisfy the requirements of CJC Rule 2.5 on competence, diligence, and cooperation." Br. of Appellant at 11. CJC 2.5 requires a judge to "perform judicial and administrative duties, competently and diligently" with the comment explaining "[c]ompetence in the performance of judicial duties requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary to perform a judge's responsibilities of judicial office." CJC 2.5(A) & cmt. 1. The superior court demonstrated its competence, diligence, and cooperation when it

12

articulated a detailed recitation of the case facts during the March 15, 2023, hearing when ultimately arriving at its ruling, with those case facts obtained exclusively from the written materials submitted by the parties as the parties did not offer further testimony or argument at the hearing. Eric removes the context from the superior court's comment that it performed "a cursory review of all of the interviews," which was only referenced as to the information submitted from the parallel criminal case. RP (Mar. 15, 2023) at 202. Similarly, Eric removes the context from the back-and-forth comments of the superior court and counsel that was a conversation more appropriately characterized as the court reminding counsel of local rules on the proper presentation of evidence and a more effective presentation of evidence than a judge "lamenting the size of declarations with attachments." Br. of Appellant at 11.

In support of his claim of error, Eric also cites to *Crouch v. Ross*, 83 Wash. 73, 145 P. 87 (1914), *aff'd*, 88 Wash. 699, 153 P. 20 (1915). *Crouch* is inapplicable here as it relates to an administrative hearing in which the report of proceedings was not available to reviewing courts due to an issue with the stenographer. *Id.* at 73-75.

As evidenced by the judge's ruling, the superior court considered the parties' affidavits and attachments, the affidavits and the GAL report from the dissolution file, and other filed materials, and then offered its extensive knowledge on the case and the parties' presented evidence in arriving at a decision.

ATTORNEY FEES

Violet requests an award of attorney fees and costs pursuant to RAP 18.1 and RCW 7.105.310(1)(j), arguing that a party may recover fees on appeal if such fees are allowable in the trial court. Eric urges this court not to award Violet attorney fees because the trial court, in its discretion, did not award fees and costs.

RAP 18.1(a) authorizes an award of attorney fees and expenses on appeal if "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." RCW 7.105.310(1)(j) gives "broad discretion to grant such relief as the [trial] court deems proper," including reimbursement to "the petitioner for costs incurred in bringing the [civil protection order] action, including reasonable attorney[ ]fees." "'If such fees are allowable at trial, the prevailing party may recover fees on appeal as well.'" *Sullivan v. Schuyler*, 31 Wn. App. 2d 791, 814, 556 P.3d 157 (2024) (quoting *Landberg v. Carlson*, 108 Wn. App. 749, 758, 33 P.3d 406 (2001)). We exercise our discretion and award Violet her reasonable attorney fees and costs on appeal.

## CONCLUSION

We affirm the DVPO and award Violet reasonable attorney fees and costs on appeal, subject to her compliance with RAP 18.1(d).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Murphy, J.

WE CONCUR:

Fearing, J.

Cooney, J.