IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37064-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WAYNE BERT SYMMONDS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — A jury found Wayne Symmonds guilty of assaults against law enforcement officers, criminal trespass, and resisting arrest. On appeal, Symmonds argues the State breached CrR 3.5 by failing to schedule a pretrial hearing when it later presented testimony from law enforcement officers as to statements made by Symmonds. Symmonds also contends that the State violated orders in limine when officers used the words "assault" and "trespass" during testimony and when the State's attorney showed a diagram to a witness before the witness' testimony. We agree that the State should have scheduled a CrR 3.5 hearing, but find no prejudice. We disagree that the State violated the orders in limine. We affirm Symmonds' convictions.

FACTS

Procedural events hold more importance than the underlying facts in this appeal. We recap some of the facts, however.

Wayne Symmonds annoyed customers outside a Conoco fuel station in Ephrata. Ida Cruz, the manager of the station, directed her employee, Thomas Longley, to ask Symmonds to leave. Symmonds refused. Longley called the police.

Ephrata Police Department Sergeant Ryan Harvey and Officer Joseph Downey arrived at the Conoco fuel station. Sergeant Harvey requested that Wayne Symmonds leave. Symmonds responded, "Make me." Report of Proceedings (RP) at 86. Twice more Harvey bade Symmonds to leave the fuel station. RP 87. Symmonds insisted that he could enter the store and purchase goods.

After Sergeant Ryan Harvey's third request, Wayne Symmonds attempted to pass the officer and enter the front door of the fuel station store. Sergeant Harvey grabbed Symmonds by his right arm and attempted to steer him from the entrance. Symmonds pushed Harvey.

Officer Joseph Downey grabbed Wayne Symmonds' left arm in an attempt to prevent Symmonds and Sergeant Ryan Harvey from crashing through a large window at the Conoco station. The officers ordered Symmonds to cease resisting and to place his hands behind his back. Symmonds freed his arm from Officer Downey's grasp and

cocked his fist. Downey reflexively raised his forearms to block Symmonds' punch.

Symmonds landed a punch on Officer Downey's forearm and upper chest area.

Sergeant Ryan Harvey shoved Wayne Symmonds, who fell off a curb and landed on his back. Sergeant Harvey grabbed Symmonds' left arm, and he placed his right knee on Symmonds' chest. Harvey requested that Symmonds roll onto his stomach and place his hands behind his back. Symmonds refused. Sergeant Harvey straddled Symmonds. Officer Joseph Downey joined Sergeant Harvey and Symmonds on the ground. Downey placed his right forearm against Symmonds' cheek in order to hold Symmonds' face away from him.

Wayne Symmonds grabbed and squeezed Sergeant Ryan Harvey's testicles. Wayne Symmonds asked: "'How's that feel?'" RP at 96. Symmonds remarked about police being terrorists. Sergeant Harvey broke from Symmonds' grasp, stood, and warned Symmonds that he would be tased. When Symmonds continued to resist, Harvey deployed his taser at Symmonds' thigh. The tasing did not end Wayne Symmonds' defiance. Sergeant Ryan Harvey again deployed his taser, and the electroshock struck Wayne Symmonds' shoulder. Symmonds grew compliant and laid on his stomach. The officers handcuffed Symmonds.

## PROCEDURE

The State of Washington charged Wayne Symmonds with assault in the third degree for striking Sergeant Ryan Harvey, assault in the third degree for attacking Officer

3

Joseph Downey, criminal trespass in the second degree, and resisting arrest.  In the omnibus hearing order, the State advised the trial court that "no custodial statements [of Wayne Symmonds] will be offered in state's case-in-chief or in rebuttal."  Clerk's Papers (CP) at 18.  The State scheduled no CrR 3.5 hearing before trial for purposes of court approval of introducing evidence of comments uttered by Symmonds.

Before trial, Wayne Symmonds moved for three orders in limine.  The written motion sought to:

> 1. Prohibit all witnesses from attending or viewing the trial until after their testimony is complete and they have been excused.  ER 615.
> 2. Prohibit all witnesses from discussing the case or their completed testimony with other witnesses until all witnesses have completed their testimony and have been excused.  ER 615.
> 3. Prohibit and exclude any evidence or testimony that a witness believed a crime had occurred or that the defendant committed a crime.  *State v. Dolan*, 118 Wn. App. 323, 73 P.3d 1011 (2003).  ("[A] witness may not give, directly or by inference, an opinion of a defendant's guilt.").

CP at 50-51 (alterations in original).  The State registered no objection to the first two motions in limine and the trial court granted the two motions.

The following colloquy occurred when the trial court addressed Wayne Symmonds' third motion in limine.

> MR. OWENS [the State's attorney]: We do not believe we're going to have anybody testify that a crime has been committed, but we are going to ask for testimony from witnesses, why they wanted the defendant trespassed from the property.
> THE COURT: Okay.  Mr. Bierley?
> MR. BIERLEY [defense counsel]: I don't object, your Honor, to them eliciting the testimony about why they wanted Mr. Symmonds to

4

leave.  But saying that he was trespassing or that he was trespassed or really that he was trespassing is a conclusion that the jury would have to make.  That's one of the counts here is trespassing in the second degree.  The witnesses can't simply state their opinion as to his guilt to that charge.  They can say something like, we'd asked him to leave, he didn't leave, so we called the cops, had them come over and advise him that he needed to leave.  But if the witness is going to testify that he was trespassing, that's making a conclusion that should be left to the jury, based upon the facts elicited, not their opinion.

      MR. OWENS: We're not going to ask what crime they think the defendant was committing to have it—we're going to ask, why did you want the defendant removed from the property?

      THE COURT: Okay.  So there's a nuance there, I see the nuance.  I think that question and *that type of testimony is fine*.  The actual, hey, he was trespassing, I think, is where Mr. Bierley is going at, with regard to prohibiting somebody from answering or giving testimony to the effect, he was trespassing, versus, we didn't want him here on the property, we didn't give him permission to be here anymore, something to that effect.

      MR. OWENS: Right.

      MR. BIERLEY: Correct.

      THE COURT: I see the distinction.  It's going to be granted.  Obviously with that caveat that you're going to be able to ask that question of why you wanted—or not you, but why the witness wanted Mr. Symmonds potentially removed from the premises.

RP at 5-6 (emphasis added).

During trial, the State asked witness Thomas Longley whether Wayne Symmonds said anything to him, to which question defense counsel objected.  Counsel contended that CrR 3.5 required a pretrial hearing to admit any of Symmonds' statements.  Symmonds' counsel asked that any statement to Longley be excluded because the State never gave notice of an intent to introduce the statement as evidence.  The State responded that CrR 3.5 applied to statements uttered to law enforcement, not to lay

witnesses.  The trial court overruled the objection.  Longley then declared that

Symmonds made a vulgar statement about refusing to leave when asked to leave the

station.

> During Officer Joseph Downey's trial testimony, he said "trespassing" four times.
>
> > Because of previous contacts, the name given to us by dispatch was somebody we believed we had contact with earlier that they had requested to be *trespassed* the day before.

RP at 84 (emphasis added).  Defense counsel objected on the ground that the State had

not sought to admit separate incidents under ER 404(b) and 609.  Counsel did not assert

that Downey's answer violated the third order in limine.  The trial court sustained the

objection.

Later the prosecuting attorney and Officer Joseph Downey exchanged the

following questions and answers:

> Q. And when you contacted him [Wayne Symmonds], did you inform him that he was not permitted to be at the gas station?
> A. Sergeant Harvey did something, yes.
> Q. And did he say anything to you?
> A. Yes.
> Q. What did he say?
> A. Sergeant Harvey said that he was *trespassed* from the gas station, he needed to leave, and Mr. Symmonds said, "Make me."
> MR. BIERLEY: Your Honor, I still object to that sort of question under the reason we had a side bar about earlier.
> THE COURT: All right.  Thank you.
> The objection is overruled. Noted.
> But go ahead, Mr. Nolta [prosecutor].

RP at 86 (emphasis added).  The direct examination of Officer Joseph Downey

6

continued:

> Q. Was he asked again to leave?
> A. He was.  Sergeant Harvey again asked him, informed him he needed to leave, he was *trespassing*, and Mr. Symmonds informed us that he could go in there and buy his stuff—
> MR. BIERLEY: Objection, comment on guilt, move to strike the response.
> THE COURT: I'm going to have the jury disregard the last portion of the answer, but I'll ask Mr. Nolta, can you ask the question more direct?
> BY MR. NOLTA:
> Q. Did the defendant leave?
> A. No.
> Q. Was he attempting to do something besides leave?
> A. At that time?  After we told him the second time?
> Q. Yes.
> A. He still sat back down.  No, he did nothing else.
> Q. Did you ask him a third time?
> A. He was asked a third time, he needed to leave, he was *trespassing*.
> MR. BIERLEY: Objection, again, comment on guilt, move to strike the response.
> THE COURT: I'm going to overrule that part of the objection.
> Go ahead.

RP at 86-87 (emphasis added).

During trial, Sergeant Ryan Harvey testified:

> Q. Okay.  And then did he quit—how would you describe Mr. Symmonds' actions when you were trying to put the—get him on his stomach to get the handcuffs on him?
> A. I would describe it as actively fighting.
> Q. All right.
> A. Not so much *resisting* as actually actively trying to *assault*.
> MR. BIERLEY: Objection, legal opinion.
> THE COURT: The jury is instructed to disregard that last statement or sentence from that answer.

7

RP at 137 (emphasis added).

During Officer Joseph Downey's testimony, the State asked him to draw a diagram of the Conoco fuel station and the respective locations of Wayne Symmonds, Sergeant Ryan Harvey, and himself during the confrontation. Later, during a trial recess, the prosecuting attorney ushered Sergeant Harvey into the courtroom to familiarize Harvey with the diagram. After the recess, defense counsel moved for a mistrial based on the State's violation of two of the orders in limine, the order excluding witnesses from attending the trial until after they testified and the order precluding witnesses from talking with other witnesses about testimony. The State responded that it showed Sergeant Harvey the diagram in order to save time since Harvey would be the next witness. The trial court denied the motion for mistrial.

During trial, the State asked questions of Officer Joseph Downey about remarks uttered by Wayne Symmonds during Symmonds' confrontation with the officers.

> Q. And did he say anything to you?
> A [Officer Joseph Downey]. Yes.
> Q. What did he say?
> A. Sergeant Harvey said that he was trespassed from the gas station, he needed to leave, and Mr. Symmonds said, "Make me."
> MR. BIERLEY: Your Honor, I still object to that sort of question under the reason we had a side bar about earlier.
> THE COURT: All right. Thank you.
> The objection is overruled. Noted.
> But go ahead, Mr. Nolta.

RP at 86.

Q. What did he do?

A [Officer Joseph Downey]. I was holding onto his left arm, attempting to roll him over for a handcuffing position. He was being given commands by Sergeant Harvey to stop resisting and to roll over, which he did not do. He brought his face back towards me and since he's already punched at me, I put my right forearm against his cheek bone to hold his face away from me, so he wouldn't spit or try and bite. And I heard him say—Sergeant Harvey had his right arm, so I wasn't totally seeing what's going on there, when I heard him say, "How's that feel?" And then Sergeant Harvey came up, and he had already—I'll throw this in there, he already told him once, you've got to stop resisting, he might be tased.

MR. BIERLEY: Objection, this is narrative again.

THE COURT: All right. I'll sustain on that last portion of the answer. The question wasn't posed as to what the other person was doing. So the jury is to disregard that last portion of the answer.

RP at 96-97.

The State also asked questions of Sergeant Ryan Harvey about remarks uttered by

Wayne Symmonds.

Q. Okay. Did you give him a directive at that time?

A. [Sergeant Ryan Harvey] Yes, I did.

Q. And what directive is that?

A. I told Mr. Symmonds that he needed to gather up his items and leave the property.

Q. All right. And did Mr. Symmonds say anything back to you?

A. Yes. He responded back by telling me that he could go inside if he wanted to.

Q. All right.

A. Or sorry. That was a response to another question. But his original response to me was, "Make me."

MR. BIERLEY: Your Honor, I still object to this line of questioning for the reason we discussed this morning.

THE COURT: All right. Thank you. The objection is noted.

RP at 117-18.

9

Q. Okay. And then did you ask him a third time?
A. [Sergeant Ryan Harvey] Yes, I did.
Q. And what was the reply then?
A. He replied at one point that he could go in the store if he wanted to. He also made a comment about police being terrorists.
Q. Okay.
MR. BIERLEY: Your Honor, I also object, as earlier. . . .

The trial court then excused the jury for purposes of colloquy with counsel.

THE COURT: . . .
So when we talked about the statements before, I just heard you right now in my head, when the statements were being made directly to a witness, which was Mr.—
MR. BIERLEY: Longley.
THE COURT: Longley, the ruling was, hey, this is not a statement made to law enforcement, this is a witness, et cetera. And so that was the basis to say, yeah, I'm going to overrule the objection.
Now, though, you're asking actual statements that were made directly to law enforcement. And normally—correct me if I'm wrong, normally any statements made to law enforcement, the state files a document that says, hey, we're going to use statements made by the defendant to law enforcement, and then we have a hearing, is it voluntary, was there a custodial detention at that point in time, et cetera.
So now you've asked him questions that were made directly to law enforcement, but we didn't have any type of 3.5 hearing on those issues.

RP at 119-20.

The State responded that the law enforcement officers had not yet placed Wayne Symmonds in custody when Symmonds spoke. The officers never interrogated Symmonds. Instead, Symmonds voluntary talked. Defense counsel responded that the State should have advanced its argument about lack of custody and a voluntary statement during the CrR 3.5 hearing, not in the middle of a witness' testimony. Symmonds asked

10

for a mistrial. The trial court denied the motion, but instructed the jury to disregard any statements made by Wayne Symmonds to law enforcement officers. The trial court reasoned that, although Symmonds was arguably not in custody, the court should have reviewed the question of custody in advance of trial.

The jury found Wayne Symmonds guilty on all four counts.

## LAW AND ANALYSIS

Wayne Symmonds repeats the cogent arguments he forwarded at trial. Symmonds contends the State violated an order in limine when witnesses voiced the words "trespass" and "assault." Symmonds also maintains that the State violated an order in limine when one of its witnesses entered the courtroom, during a trial recess, and viewed a diagram drawn by another witness. Finally, Symmonds asserts that the State violated CrR 3.5 when it asked witnesses to repeat statements uttered by Symmonds without the State first gaining court approval to admit the statements. Symmonds argues that the trial court erred when refusing to grant him a mistrial either because of one of the State's breaches of orders or rules or because of the cumulative effect of the violations.

We agree the State should have scheduled a CrR 3.5 hearing, but we find no prejudice in this error. We hold that the State did not violate any order in limine. Because of only one nonprejudicial error, we do not address Wayne Symmonds' argument of cumulative error.

11

CrR 3.5 Hearing

Wayne Symmonds asserts that the State committed prosecutorial misconduct by repeatedly eliciting statements made by him to law enforcement witnesses without first holding a CrR 3.5 hearing.  Symmonds claims that the trial court should have granted his motion for a mistrial or dismissal as a result.  The State responds that the elicited statements were not custodial, and thus a CrR 3.5 hearing was not required prior to introducing them.  We disagree with the State's reading of CrR 3.5.  We agree with Symmonds that the State should have given him advance notice that it intended to introduce statements uttered by him as evidence.  In turn, the State should have scheduled a pretrial CrR 3.5 hearing.  Because the statements would have been admitted if the trial court had conducted a CrR 3.5 hearing, we find no prejudice.

CrR 3.5(a) provides in relevant part:

> When *a statement* of the accused is to be offered in evidence, the judge at the time of the omnibus hearing shall hold or set the time for a hearing, if not previously held, for the purpose of determining whether the statement is admissible.

(Emphasis added.)  The rule does not place any qualifications on the type of statement or to whom the statement was made.

The provisions of CrR 3.5 are mandatory.  *State v. Shelby*, 69 Wn.2d 295, 300, 418 P.2d 246 (1966); *State v. Kidd*, 36 Wn. App. 503, 509, 674 P.2d 674 (1983).  Before

introducing evidence of a statement of the defendant, the court must hold a hearing to determine if the statement was freely given. *State v. Kidd*, 36 Wn. App. at 509.

The purpose of a pretrial confession hearing under CrR 3.5 is to allow the court, prior to trial, to rule on the admissibility of sensitive evidence. *State v. Fanger*, 34 Wn. App. 635, 636-37, 663 P.2d 120 (1983); *State v. Taylor*, 30 Wn. App. 89, 92-93, 632 P.2d 892 (1981). The hearing serves the purpose of determining whether any incriminating statement constituted a custodial confession without advance *Miranda* warnings. The rule promotes judicial efficiency by insulating the jury from tainted evidence, thereby avoiding mistrials and continuances. *State v. Rice*, 24 Wn. App. 562, 565, 603 P.2d 835 (1979). A confession hearing also enables the parties to determine the weaknesses in their cases and thus encourages settlement. *State v. Fanger*, 34 Wn. App. 635, 637 (1983).

To trigger the protections afforded by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966), a suspect must be taken into custody or otherwise deprived of his freedom of action in a significant way. *State v. McWatters*, 63 Wn. App. 911, 915, 822 P.2d 787 (1992). Custodial questioning must be preceded by *Miranda* warnings. Custodial interrogation engenders inherently compelling pressures that work to undermine the individual's will to resist pressures applied by law enforcement and to compel one to speak when he would not otherwise speak freely. *Miranda v. Arizona*, 384 U.S. at 467.

The State contends that it need not have scheduled a CrR 3.5 hearing because such a hearing is required only to introduce custodial statements and Wayne Symmonds uttered no comments while in custody. We agree that language from some Washington decisions declare that CrR 3.5 applies only to custodial statements. *State v. DeCuir*, 19 Wn. App. 130, 134, 574 P.2d 397 (1978); *State v. Falk*, 17 Wn. App. 905, 909, 567 P.2d 235 (1977); *State v. McFarland*, 15 Wn. App. 220, 222, 548 P.2d 569 (1976); *State v. Harris*, 14 Wn. App. 414, 422, 542 P.2d 122 (1975). We fear that the State reads this principle too broadly, however, because the State uses the rule to authorize it to unilaterally determine whether an accused was in custody at the time of any statement. The trial court, not the prosecuting attorney, should determine whether the defendant spoke while in custody. Whether a police encounter constitutes a custodial interrogation is a legal conclusion for the court to make. *Thompson v. Keohane*, 516 U.S. 99, 112-13, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995).

The principal cases, on which the State relies, bear some significant differences. In *State v. Harris*, 14 Wn. App. 414 (1975), the court applied the rule in the context of the accused making the statement to one other than a law enforcement officer. In *State v. Falk*, 17 Wn. App. 905 (1977), the accused voluntarily entered the police station to confess, and, when the State introduced the confession without a hearing, the trial court allowed a recess for the defendant to ponder how to respond to the evidence.

14

Wayne Symmonds contends he was in custody when he uttered statements used at trial. Sergeant Ryan Harvey grabbed Symmonds as Symmonds attempted to enter the store. Officer Joseph Downey thereafter also clutched Symmonds. The State should have scheduled a CrR 3.5 hearing in order to defeat this contention. The State should have afforded Wayne Symmonds the opportunity to advance his contentions before trial, and the trial court should have been allowed to rule on the issue in advance of trial.

We do not deem the failure to conduct a hearing reversible. The failure to hold a CrR 3.5 hearing does not render an otherwise admissible statement inadmissible. *State v. Baker*, 68 Wn.2d 517, 521, 413 P.2d 965 (1966); *State v. Kidd*, 36 Wn. App. 503, 509 (1983); *State v. Falk*, 17 Wn. App. 905, 908 (1977). Also, the failure to conduct a CrR 3.5 hearing does not require reversal. *State v. Falk*, 17 Wn. App. 905, 908.

Wayne Symmonds complains about introduction of four statements he uttered to law enforcement officers. He told Sergeant Ryan Harvey to "make me," when Harvey told him to leave the premises. Symmonds added that he could enter the Conoco station to buy goods. He asked Harvey "how does that feel," when he grabbed Harvey's testicles. He called police terrorists.

We do not resolve whether Symmonds voiced the remarks while in custody. Symmonds suffered no prejudice from introduction of the comments because he did not make the comments in response to interrogation from officers. Officers asked him no questions that led to his offhand remarks. Symmonds voluntarily bespoke.

15

To trigger the protections afforded by *Miranda v. Arizona*, a suspect must be subjected to interrogation. *State v. Lewis,* 32 Wn. App. 13, 17, 645 P.2d 722 (1982). Interrogation involves express questioning likely to elicit an incriminating response. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). Voluntary, unsolicited statements of an accused made before interrogation are not rendered inadmissible by the absence of a previous advisement of constitutional rights. *State v. Eldred*, 76 Wn.2d 443, 448, 457 P.2d 540 (1969); *State v. Kidd*, 36 Wn. App. 503, 509 (1983). A defendant's incriminating statement that is not in response to an officer's question is freely admissible. *State v. Bradley*, 105 Wn.2d 898, 904, 719 P.2d 546 (1986).

In *State v. Kidd*, 36 Wn. App. 503 (1983), this court affirmed a conviction despite the admission of an inculpatory statement uttered by Kidd to a law enforcement officer without the trial court having earlier conducting a CrR 3.5 hearing. Kidd's statements were voluntary and unsolicited.

Wayne Symmonds' trial court told the jury to disregard the testimony of Symmonds' comments to the law enforcement officers. The trial court need not have so instructed the jury. Therefore, Symmonds suffered no prejudice.

### Words of Guilt

Wayne Symmonds asserts that the trial prosecuting attorney committed misconduct by repeatedly eliciting testimony that violated an order in limine. That order,

16

according to Symmonds, barred conclusory and guilt opining language, including

testimony that Symmonds was "trespassing" or engaged in an "assault." We agree that

the trial court barred expressions of guilt. We disagree that the trial court precluded the

use of the words or a form of the words "trespass" or "assault." We further disagree that

any witness opined as to Symmonds' guilt.

Wayne Symmonds' written motion in limine sought exclusion of any testimony

that a witness believed the defendant committed a crime. The motion did not expressly

ask that the trial court exclude the words "trespass" or "assault." The trial court granted

the motion, but entered no formal order. In its oral ruling, the trial court never expressly

excluded the use of any words.

Before the court ruled, the prosecutor and defense counsel jousted about use of

specific words such as "trespass." The State's attorney commented that the State

intended to elicit testimony as to Wayne Symmonds being "trespassed" from the Conoco

station. Defense counsel objected. The prosecutor responded that the State did not

intend to have any witness to testify that Symmonds was trespassing, only that the

gasoline station wanted Symmonds "trespassed," as in removed from the premises. The

court recognized a "nuance." The court commented:

> THE COURT: Okay. So there's a nuance there, I see the nuance. I
> think that question and that type of testimony is fine. The actual, hey, he
> was trespassing, I think, is where Mr. Bierley is going at, with regard to
> prohibiting somebody from answering or giving testimony to the effect, he
> was trespassing, versus, we didn't want him here on the property, we didn't

> give him permission to be here anymore, something to that effect.
> MR. OWENS: Right.
> MR. BIERLEY: Correct.
> THE COURT: I see the distinction. It's going to be granted. Obviously with that caveat that you're going to be able to ask that question of why you wanted—or not you, but why the witness wanted Mr. Symmonds potentially removed from the premises.

RP at 6. We read the ruling as allowing the word "trespass" to be used in the context of the reason for the officers traveling to the Conoco station and for the request for removal of Symmonds from the premises. We read the ruling as also permitting the use of the word "trespass" in a context in which a lay person would employ the word. The ruling prohibited use of the word "trespass" in the context of Symmonds being guilty of a crime and in the context of the legal meaning of the term. Symmonds could have, but did not, press the court for a specific ruling precluding the use of any particular word.

Officer Joseph Downey used the word "trespass" or a form of the word four times. On the first occasion, Officer Downey mentioned that the gas station had asked that Wayne Symmonds be "trespassed" the day before. Defense counsel objected, but on the basis that the testimony mentioned earlier bad act of Symmonds and was precluded under ER 404(b). Counsel did not assert that Downey's answer violated the third order in limine. So Symmonds did not believe the evidence violated the order.

On the second occasion, Officer Downey mentioned that the gas station had "trespassed" Symmonds from the station in the sense that Symmonds "needed to leave." RP at 86. The trial court, consistent with its earlier ruling, overruled an objection to the

18

testimony.

On the third occasion, Officer Joseph Downey answered the question of whether the officers asked Wayne Symmonds to leave the premises. Downey responded that Sergeant Ryan Harvey told Symmonds "he needed to leave" because "he was trespassing." RP at 86-87. The trial court did not expressly sustain an objection on the basis of a comment on guilt, but the court directed the jury to disregard the testimony. The trial court also asked the prosecuting attorney to ask the question more direct. We are uncertain if the trial court deemed the testimony to violate the order in limine. The testimony could relate more to the point that the Conoco station did not wish Symmonds to be present, not to the point that Symmonds committed a crime.

On the fourth occasion, the prosecutor asked Officer Joseph Downey if he asked Wayne Symmonds a third time to leave. Downey responded that he asked Symmonds a third time that "he needed to leave, he was trespassing." RP at 87. The use of the term "trespass" was in the same context as Downey's use of the term the third time. The trial court then overruled an objection to the evidence as commenting on guilt. This fourth ruling suggests that the trial court did not consider the third reference to "trespassing" as a comment on guilt.

Wayne Symmonds in essence characterizes Officer Joseph Downey's use of the word "trespass" as impermissible opinion testimony as to his guilt. Numerous factors determine whether witness statements are impermissible opinion testimony, including the

19

type of witness involved, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact. *City of Seattle v. Heatley*, 70 Wn. App. 573, 579, 854 P.2d 658 (1993). Testimony that is not a direct comment on the defendant's guilt or on the veracity of a witness, that helps the jury, and that is based on inferences from the evidence is not improper opinion testimony. *City of Seattle v. Heatley*, 70 Wn. App. at 578.

In *State v. Pearce*, 296 N.C. 281, 250 S.E.2d 640 (1979), Jerry Pearce complained that a physician and officer, both who testified on behalf of the State, used the word "rape" during testimony. Pearce argued that use of the word, in a rape prosecution, constituted an expression of opinion that was the ultimate fact for the jury to determine. The appellate court disagreed that use of the term used to name the crime constituted an opinion on a question of law. Instead, sometimes the word functions as a shorthand method of describing conduct.

In *United States v. Two Eagle*, 318 F.3d 785 (8th Cir. 2003), the government convicted Duane Two Eagle of the federal crime of assault resulting in serious injury. On appeal, Two Eagle argued that the trial court abused its discretion by denying his motion in limine to prohibit the victims' doctors from testifying that the victim sustained "serious bodily injury," an element of the crime. Two Eagle maintained that the testimony invaded the province of the jury and that the testimony sought was a legal opinion. The court disagreed. The appeals court observed that testimony is not defective merely

20

because it utilizes the words of the legal standard. Commonly used words and their plain meaning often match their legal meaning.

We conclude that the trial court properly allowed testimony that included the word "trespassing" in its lay or common understanding. Officer Joseph Downey never rendered an inadmissible opinion of guilt.

On appeal, Wayne Symmonds also complains that Sergeant Ryan Harvey used the word "assault" during his testimony. We resolve this assignment of error with the same reasoning employed in our ruling concerning the word "trespass." The trial court never expressly barred use of the word "assault." Harvey used the term as a shorthand method of describing conduct, not to opine about Symmonds' guilt.

Harvey's Review of Diagram

Wayne Symmonds next argues that the State breached the orders in limine, prohibiting witnesses from attending or viewing the trial until after being excused and from discussing testimony with another witness, when the prosecuting attorney brought Sergeant Ryan Harvey into the courtroom during a recess to review the diagram prepared by Officer Joseph Downey. Symmonds maintains that this violation warranted either a mistrial or the exclusion of Sergeant Harvey as a witness. We hold that the orders in limine did not preclude the prosecutor from discussing testimony with an upcoming witness or preclude a witness from entering the courtroom during a trial recess.

The trial court entered the order excluding witnesses from the courtroom pursuant

21

to ER 615. The first sentence of the rule declares:

> At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion.

The rule does not preclude entry of a witness during a recess when no witness is on the stand. The rule does not preclude an attorney from preparing a witness in advance of the witness' testimony by showing the witness an exhibit or discussing other witness' testimony.

In *State v. Allison*, 260 Iowa 176, 147 N.W.2d 910 (1967), Edward Allison assigned error to State's counsel's reviewing an exhibit with a witness during a trial recess. The trial court had earlier ordered sequestration of all witnesses. The Supreme Court of Iowa ruled that the sequestration order did not preclude counsel from preparing a witness during a recess. The court concluded that the right of counsel on either side to consult with witnesses before examining them is a valuable right and should not be denied except by specific order of court for good reason.

In *Commonwealth v. Mathis*, 317 Pa. Super. 362, 464 A.2d 362 (1983), Joseph Mathis argued that the prosecuting attorney violated the trial court's earlier order directing the witnesses be segregated when the attorney discussed testimony summaries with the witnesses during a recess and before they testified in rebuttal. The Pennsylvania court disagreed. Wayne Symmonds cites no legal authority to the contrary.

No. 37064-0-III
*State v. Symmonds*

A trial court may have authority to preclude counsel from discussing, during a trial recess, a previous witness' testimony with an upcoming witness. But we do not reach this question because the court never entered such an order and because we do not know if the prosecuting attorney discussed another witness' testimony with Sergeant Ryan Harvey.

CONCLUSION

We affirm the convictions of Wayne Symmonds.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, A.C.J.

_____
Lawrence-Berrey, J.

23